RAUCH v. URGENT CARE PHARM., INC.

[178 N.C. App. 510 (2006)]

VIRGINIA RAUCH, PLAINTIFF v. URGENT CARE PHARMACY, INC.; R. KEN MASON, JR.; W. RAY BURNS; FIRSTHEALTH OF THE CAROLINAS, INC.; PROFESSIONAL COMPOUNDING CENTERS OF AMERICA, LTD., A/K/A PROFESSIONAL COMPOUNDING CENTERS OF AMERICA, LLP, F/K/A PROFESSIONAL COMPOUNDING CENTERS OF AMERICA, INC., D/B/A PCCA, DEFENDANTS

No. COA05-472

(Filed 18 July 2006)

**1. Jurisdiction— motions for extension of time and substitution of counsel—not general appearances**

Motions for an extension of time to answer and for substitution of counsel were not general appearances which waived an objection to personal jurisdiction. Defendant did not seek any determination on the merits nor did he participate in any actions invoking the adjudicatory powers of the court.

**2. Appeal and Error— appealability—interlocutory order— oral certification—reviewed for loss of substantial right**

An interlocutory order was reviewed for the loss of a substantial right where the trial court orally certified its ruling as immediately appealable but the record contains no written certification order.

**3. Appeal and Error— appealability—lack of personal jurisdiction—lack of subject matter jurisdiction**

The trial court's dismissal of plaintiff's claims based on a lack of personal jurisdiction was immediately appealable. However, the dismissal of plaintiff's alter ego claim based on lack of subject matter jurisdiction was not immediately appealable, and her request to treat her appeal as a petition for certiorari was denied because the request did not comply with N.C. Appellate Rule 21.

**4. Appeal and Error— appealability—same factual issues, different legal issues—no substantial right**

Plaintiff did not show that she would lose a substantial right without an immediate appeal based on inconsistent verdicts where there would be a correspondence between the factual issues but not the legal issues.

**5. Jurisdiction— minimum contacts—president of company— contacts insufficient**

Nonresident defendant pharmacy president did not have sufficient minimum contacts with North Carolina such that a court

in North Carolina could exercise personal jurisdiction over him individually without violating his due process rights in a negligence and products liability action.

Appeal by plaintiff from judgment and orders entered 15 November 2004 and orders entered 29 November 2004 by Judge Mark E. Klass in Hoke County Superior Court. Heard in the Court of Appeals 7 February 2006.

*The McLeod Law Firm, P.A., by William W. Aycock, Jr., for plaintiff-appellant.*

*Poyner & Spruill, LLP, by Timothy W. Wilson, for Urgent Care Pharmacy, Inc. and W. Ray Burns, defendant-appellees.*

JACKSON, Judge.

On 9 January 2003, Virginia Rauch ("plaintiff") filed a complaint alleging that she developed serious health problems, including fungal meningitis, as a result of receiving injections of contaminated methylprednisolone. The contaminated methylprednisolone had been compounded by Urgent Care Pharmacy, Inc. ("Urgent Care"), and sold to FirstHealth of the Carolinas, Inc. ("FirstHealth") for use in First-Health's hospital and pain clinic. As alleged by plaintiff, Urgent Care's compounded methylprednisolone injections had been contaminated with a fungus which caused individuals receiving the injections to contract fungal meningitis and other serious health conditions.

Plaintiff's complaint contained multiple claims against defendants Urgent Care and FirstHealth, Urgent Care's president Ray Burns ("Burns"), Urgent Care's head pharmacist Ken Mason ("Mason"), and Professional Compounding Centers of America, Ltd. ("PCCA"), the seller of raw materials used by Urgent Care in compounding the methylprednisolone. Plaintiff's claims included: (1) negligence on the part of defendants Urgent Care, Mason, and Burns; (2) liability on the part of defendants Urgent Care, Mason, and Burns under North Carolina General Statutes, section 99B-6; (3) Urgent Care's breach of the implied warranties of merchantability and fitness for a particular purpose; (4) negligence on the part of PCCA; (5) negligence on the part of FirstHealth; (6) FirstHealth's breach of the implied warranties of merchantability and fitness for a particular purpose; and (7) a claim seeking to pierce Urgent Care's corporate veil and hold defendant Burns liable as Urgent Care's "alter ego."

On 16 January 2003, Urgent Care filed for bankruptcy in South Carolina, and was appointed a bankruptcy trustee. An order lifting the automatic stay of plaintiff's claims against Urgent Care was entered 6 June 2003, permitting plaintiff to move forward with her claims, but limiting her recovery from Urgent Care to the funds available under Urgent Care's liability insurance policy.

Upon being served with plaintiff's complaint, defendant Burns sent a copy of the complaint to the attorneys at Poyner and Spruill, LLP who were representing defendants Burns and Urgent Care in a separate, similar action. Defendant Burns also notified his personal liability insurance carrier of the action. Unbeknownst to defendant Burns or his counsel at Poyner and Spruill, defendant Burns' personal liability insurance carrier retained attorney Melissa Garrell ("Garrell") of Teague, Campbell, Dennis and Gorham, LLP. Garrell filed a motion for extension of time to answer for defendant Burns on 24 February 2003, but failed to inform defendant Burns or Poyner and Spruill of her actions. Defendant Burns' counsel from Poyner and Spruill learned of Garrell's motion the following day, and shortly thereafter notified Garrell that Poyner and Spruill already was representing defendant Burns in a similar action, and also would be representing him in the present action. Counsel from Poyner and Spruill filed a motion for substitution of counsel on 28 March 2003, and a consent order allowing the motion was entered on 4 April 2003.

[1] We note initially that Garrell's motion for an extension of time to answer does not constitute a general appearance, and does not serve as a waiver of defendant Burns' objection to the trial court's exercise of personal jurisdiction over him. See Williams v. Williams, 46 N.C. App. 787, 789, 266 S.E.2d 25, 27 (1980); Swenson v. Thibaut, 39 N.C. App. 77, 89, 250 S.E.2d 279, 288 (1978). Similarly, we note that Poyner and Spruill's motion for substitution of counsel also does not constitute a general appearance thereby waiving defendant Burns' objection to personal jurisdiction. When a defendant "invokes the adjudicatory powers of the court in any other matter not directly related to the questions of jurisdiction, he has made a general appearance and has submitted himself to the jurisdiction of the court whether he intended to or not." Swenson, 39 N.C. App. at 89, 250 S.E.2d at 288. In the present case defendant did not seek any determination on the merits of the case nor did he participate in any actions invoking the adjudicatory powers of the court. Defendant Burns' motion for substitution of counsel was simply a ministerial action which did not constitute a participation by defendant Burns in the present action or

general appearance for purposes of the trial court's exercising personal jurisdiction over him.

Defendant Burns answered plaintiff's claims on 30 March 2003, asserting numerous affirmative defenses and moving to dismiss plaintiffs' claims for multiple reasons, including lack of subject matter and personal jurisdiction, and plaintiff's failure to comply with Rule 9(j) of our Rules of Civil Procedure. Defendant Urgent Care answered plaintiff's claims on 31 July 2003, also asserting numerous affirmative defenses and moving to dismiss plaintiff's claims for failure to comply with Rule (9)(j). On 11 October 2004, Urgent Care filed a separate motion to dismiss plaintiff's complaint, and in the alternative Urgent Care sought a grant of partial summary judgment on plaintiff's warranty claims.

A hearing on the parties' motions was held on 11 October 2004. At the hearing, the trial court granted summary judgment for PCCA, and plaintiff's claims against PCCA were dismissed with prejudice. Defendant Burns' motion to dismiss plaintiff's claims on the basis of a lack of personal jurisdiction over defendant Burns and a lack of subject matter jurisdiction over plaintiff's "alter ego" claim was also granted. The trial court found that due to Urgent Care being in bankruptcy proceedings, the bankruptcy trustee was the proper party to bring a claim to pierce Urgent Care's corporate veil and hold defendant Burns liable as its alter ego, thus plaintiff lacked standing to bring the claim herself. The trial court also found that defendant Urgent Care is a "health care provider" subject to the provisions of Article 1B of Chapter 90 of the North Carolina General Statutes, but that it was not a merchant or a seller of goods subject to the warranty provisions of the Uniform Commercial Code. Plaintiff's claims alleging Urgent Care's breach of the implied warranties of merchantability and fitness for a particular purpose were dismissed with prejudice as the trial court granted partial summary judgment in favor of Urgent Care. On 6 December 2004, plaintiff dismissed her claims against defendant FirstHealth with prejudice.

Following the orders entered by the trial court, arising out of the 11 October 2004 hearing, the only claims remaining for trial included plaintiff's claims for negligence against defendants Urgent Care and Mason, and the liability of defendants Urgent Care and Mason under North Carolina General Statutes, section 99B-6. On 9 December 2004 plaintiff gave notice of her appeal from the trial court's orders granting PCCA's motion for summary judgment, granting defendant Burns' motions to dismiss based on a lack of subject matter and personal

jurisdiction, and granting partial summary judgment for Urgent Care on plaintiff's implied warranties claims. Plaintiff subsequently withdrew her appeal of the granting of summary judgment of PCCA, thus the issues on appeal only concern plaintiff's appeals regarding defendants Urgent Care and Burns.

[2] An interlocutory order is one which is "made during the pendency of an action, which does not dispose of the case, but leaves it for further action by the trial court in order to settle and determine the entire controversy." *Veazey v. Durham*, 231 N.C. 357, 362, 57 S.E.2d 377, 381 (1950). In contrast, a final judgment, which is immediately appealable, "disposes of the cause as to all the parties, leaving nothing to be judicially determined between them in the trial court." *Id.* at 361-62, 57 S.E.2d at 381. An interlocutory order is

> appealable before entry of a final judgment if (1) the trial court certifies there is "no just reason to delay the appeal of a final judgment as to fewer than all of the claims or parties in an action" or (2) the order " 'affects some substantial right claimed by the appellant and will work an injury to him if not corrected before an appeal from the final judgment.' "

*McCutchen v. McCutchen*, 360 N.C. 280, 282, 624 S.E.2d 620, 623 (2006) (quoting *Dep't of Transp. v. Rowe*, 351 N.C. 172, 175, 521 S.E.2d 707, 709 (1999); *see also* N.C. Gen. Stat. §§ 1-277; 1A-1, Rule 54(b); 7A-27 (2005). In the instant case, the trial court orally certified its ruling as immediately appealable at the 11 October 2004 hearing, however the record on appeal does not contain the trial court's Rule 54 certification in the form of a written order. Thus, we must determine whether defendants have a substantial right which would be lost absent an immediate review by this Court. *See Robins & Weill v. Mason*, 70 N.C. App. 537, 540, 320 S.E.2d 693, 695-96, *disc. review denied*, 312 N.C. 495, 322 S.E.2d 559 (1984) ("[N]o appeal lies to an appellate court from an interlocutory order unless the order deprives the appellant of a substantial right which he would lose absent a review prior to final determination."); *see also, VisionAIR, Inc. v. James*, 167 N.C. App. 504, 507, 606 S.E.2d 359, 361 (2004).

[3] We note that plaintiff's appeal of the trial court's dismissal of her claims against defendant Burns based on a lack of personal jurisdiction is not interlocutory, and is immediately appealable and reviewable by this Court. *See* N.C. Gen. Stat. § 1-277(b) (2005) ("Any interested party shall have the right of immediate appeal from an adverse ruling as to the jurisdiction of the court over the person or property

of the defendant . . . ."); *Robinson v. Gardner*, 167 N.C. App. 763, 606 S.E.2d 449, *disc. review denied*, 359 N.C. 322, 611 S.E.2d 417 (2005). However, plaintiff's appeal of the trial court's dismissal of her alter ego claim against defendant Burns based on a lack of subject matter jurisdiction is not immediately appealable pursuant to section 1-277(b), and therefore is interlocutory. *See Teachy v. Coble Dairies, Inc.*, 306 N.C. 324, 327, 293 S.E.2d 182, 184 (1982) (Section 1-277(b) "does not apply to orders denying motions made pursuant to Rule 12(b)(1) to dismiss for lack of subject matter jurisdiction" as these orders are "not determinative of an action."); *Shaver v. Construction Co.*, 54 N.C. App. 486, 487, 283 S.E.2d 526, 527 (1981) ("A trial judge's order denying a motion to dismiss for lack of subject matter jurisdiction is interlocutory and not immediately appealable.").

Plaintiff acknowledges that her appeal of the orders granting the remaining motions of defendants Burns and Urgent Care is interlocutory, in that claims against defendants Mason and Urgent Care for negligence are still pending; however, plaintiff has asked this Court to allow for an immediate appeal from the interlocutory orders which plaintiff believes affect a substantial right. In the alternative, plaintiff has asked this Court, in its discretion, to treat plaintiff's appeal as a petition for a *writ of certiorari* pursuant to Rule 21 of our Rules of Appellate Procedure, thereby allowing us to address the appeal on its merits.

Rule 21 of our appellate rules provides that a *"writ of certiorari* may be issued in appropriate circumstances by either appellate court to permit review of the judgments and orders of trial tribunals when . . . no right of appeal from an interlocutory order exists . . . ." N.C. R. App. P. 21(a)(1) (2005). Our rules specify that a petition for *writ of certiorari* to this Court must be filed with the clerk of the Court of Appeals, and the petition must contain the following:

> a statement of the facts necessary to an understanding of the issues presented by the application; a statement of the reasons why the writ should issue; and certified copies of the judgment, order or opinion or parts of the record which may be essential to an understanding of the matters set forth in the petition.

N.C. R. App. P. 21(b), (c) (2005). Plaintiff's sole statement in her brief fails to comply with the requirements of Rule 21. "The North Carolina Rules of Appellate Procedure are mandatory and 'failure to follow these rules will subject an appeal to dismissal.' " *Viar v. N.C. Dep't of Transp.*, 359 N.C. 400, 401, 610 S.E.2d 360, 360 (citation omitted),

*reh'g denied,* 359 N.C. 643, 617 S.E.2d 662 (2005). Further, "[i]t is not the role of the appellate courts . . . to create an appeal for an appellant." *Id.* at 402, 610 S.E.2d at 361. Thus we decline to exercise our discretion and deny plaintiff's petition for *writ of certiorari.*

**[4]** Plaintiff argues the trial court's dismissal of her claims against· defendants Urgent Care and Burns affects a substantial right in that overlapping factual issues between the dismissed claims and the remaining claims create the potential for inconsistent verdicts which could result from two trials on the same factual issues. In *Green v. Duke Power Co.,* our Supreme Court held that " 'the right to avoid the possibility of two trials *on the same issues* can be . . . a substantial right.' " 305 N.C. 603, 608, 290 S.E.2d 593, 596 (1982) (citation omitted) (emphasis in original).

Plaintiff argues that inconsistent verdicts could result if different juries were to hear the "myriad of factual issues common to all of the claims." In *Stetser v. TAP Pharm. Prods. Inc.,* however, we held that "[a]n inconsistent verdict can only occur if the same issue is involved in two trials." 165 N.C. App. 1, 29, 598 S.E.2d 570, 589 (2004). Here, plaintiff contends that the factual issues involved are common to all of plaintiff's claims, thus there is the potential for inconsistent verdicts if multiple trials are held on all of the claims. However, claims alleging negligence and liability under North Carolina General Statutes, section 99B-6, and claims seeking to pierce a corporate veil and alleging a breach of implied warranties are very different, and require different evidence to satisfy the very different elements of each claim. A finding of liability under one claim and not another is not necessarily an inconsistent verdict, as the various claims do not involve the same issues, and each requires that different elements be proved. Although some of the *factual* issues would be the same in the trying of each of the trials, the *legal* issues would not.

Therefore, we hold plaintiff has not shown that she possibly would be subjected to two trials on the same issue or that inconsistent verdicts likely would result were she to be involved in multiple trials. Accordingly, as plaintiff has failed to demonstrate that a substantial right is affected, we hold plaintiff's appeal is interlocutory and not immediately appealable. We therefore dismiss as interlocutory plaintiff's appeal of the orders granting defendant Urgent Care's motion for partial summary judgment on plaintiff's warranty claims, and the order dismissing plaintiff's alter ego claim against defendant Burns for a lack of subject matter jurisdiction.

**[5]** Our review of the dismissal of plaintiff's claim against defendant Burns for a lack of personal jurisdiction is limited to a determination as to whether or not defendant Burns had sufficient "minimum contacts" with North Carolina to subject him to jurisdiction by the courts of this state. *See Love v. Moore*, 305 N.C. 575, 581, 291 S.E.2d 141, 146 (1982) ("[T]he right of immediate appeal of an adverse ruling as to jurisdiction over the person, under [N.C. Gen. Stat. § 1-277(b)], is limited to rulings on 'minimum contacts' questions, the subject matter of Rule 12(b)(2)."); *Robinson*, 167 N.C. App. at 767-68, 606 S.E.2d at 452.

Our Courts have adopted a two-part test to determine whether a court in this state may exercise personal jurisdiction over a nonresident defendant. The court first must determine whether our "long-arm" statute authorizes jurisdiction over the defendant. N.C. Gen. Stat. § 1-75.4 (2005). If the statute does authorize jurisdiction, the court next must "determine whether the court's exercise of jurisdiction over the defendant is consistent with due process." *Tejal Vyas, LLC v. Carriage Park Ltd. P'ship*, 166 N.C. App. 34, 37, 600 S.E.2d 881, 885 (2004), *aff'd*, 359 N.C. 315, 608 S.E.2d 751 (2005). North Carolina's long-arm statute provides that personal jurisdiction over defendant Burns is proper under the following provisions:

(4) Local Injury; Foreign Act.—In any action for wrongful death occurring within this State or in any action claiming injury to person or property within this State arising out of an act or omission outside this State by the defendant, provided in addition that at or about the time of the injury either:

  a. Solicitation or services activities were carried on within this State by or on behalf of the defendant;

  b. Products, materials or thing processed, serviced or manufactured by the defendant were used or consumed, within this State in the ordinary course of trade; . . . .

N.C. Gen. Stat. § 1-75.4(4) (2005).

" 'When personal jurisdiction is alleged to exist pursuant to the long-arm statute, the question of statutory authority collapses into one inquiry—whether defendant has the minimum contacts with North Carolina necessary to meet the requirements of due process.' " *Tejal*, 166 N.C. App. at 38, 600 S.E.2d at 885 (quoting *Hiwassee Stables, Inc. v. Cunningham*, 135 N.C. App. 24, 27, 519 S.E.2d 317, 320 (1999)). Our primary determination thus is whether defendant

Burns had " 'certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." ' " *Id.* (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 90 L. Ed. 95, 102 (1945)). A defendant will be found to have sufficient minimum contacts with North Carolina when he has

> purposefully availed [himself] of the privilege of conducting activities within the forum state and invoked the benefits and protections of the laws of .North Carolina. The relationship between the defendant and the forum state must be such that the defendant should "reasonably anticipate being haled into" a North Carolina court. The facts of each case determine whether the defendant's activities in the forum state satisfy due process.

*Id.* at 38-39, 600 S.E.2d at 885-86 (internal citations omitted).

In the instant case, we hold defendant Burns did not have sufficient minimum contacts with the state of North Carolina, such that a court in our state could exercise personal jurisdiction over him individually without violating his due process rights. Defendant Burns signed and submitted defendant Urgent Care's 2002 application to the North Carolina Board of Pharmacy, seeking privileges for Urgent Care to conduct pharmacy business in this state, however he signed the application in his capacity as president of defendant Urgent Care. There is no evidence in the record which suggests that defendant Burns participated in the filling of any prescriptions or compounding activities at Urgent Care during 2002 when the contaminated methylprednisolone injections were compounded. Similarly, defendant Burns had no direct involvement with the day-to-day operations of defendant Urgent Care in 2002. He also had no contact with anyone in North Carolina regarding Urgent Care's compounding methylprednisolone injections, and in fact, was unaware that Urgent Care was compounding the drug until after Urgent Care was notified about the possible contamination. Defendant Burns then spoke, via telephone, to physicians and other individuals in North Carolina regarding the investigation and the recall of the contaminated injections, however he did so in his capacity as president of defendant Urgent Care. Defendant Burns also does not own any real or personal property in this state, nor has he lived here since he was eighteen years old. The evidence does suggest that he may have visited the state for personal reasons prior to 2002, and that during such visit he delivered Urgent Care's application to the North Carolina Pharmacy Board.

After a thorough review of the record, we hold there is competent evidence to support the trial court's conclusion that defendant Burns did not engage in the requisite minimum contacts to satisfy the Due Process Clause. U.S. Const. amend. V and amend. XIV, § 1. Therefore, we hold the trial court acted properly in granting defendant's motions to dismiss, therefore plaintiff's assignment of error is overruled.

Dismissed in part; affirmed in part.

Judges McGEE and HUNTER concur.