SAFT AMERICA, INC., Plaintiff v. PLAINVIEW BATTERIES, INC., ENERGEX BATTERIES, INC., BERNIE R. ERDE, and RUSSELL J. BLEEKER, Defendants

No. COA07-823

(Filed 15 April 2008)

## 1. Jurisdiction— personal—corporate officer and shareholder—insufficient minimum contacts

A nonresident corporate officer and principal shareholder had insufficient minimum contacts with this state to permit the exercise of personal jurisdiction over him in an action for breach of contract and unjust enrichment based upon unpaid purchase orders for goods delivered to the corporate defendants because: (1) personal jurisdiction over an individual officer or employee of

a corporation may not be predicated merely upon the corporate contacts with the forum; (2) corporate officers are subject to personal jurisdiction when in addition to their roles as officers, they complete an act in their individual capacities; and (3) plaintiff wholly failed to allege that any act defendant committed occurred within his individual capacity.

## 2. Corporations— piercing corporate veil—sufficiency of allegations

The uncontradicted allegations in plaintiff's complaint sufficiently stated a basis for piercing the corporate veil for the purpose of establishing personal jurisdiction over the corporate defendant Energex in an action for breach of contract and unjust enrichment based upon unpaid purchase orders for goods delivered under contracts with corporate defendant Plainview where plaintiff alleged: (1) the individual defendants have violated certain corporate laws and formalities; (2) the individual defendants exercised control over the finances, polices, and business practices of both corporate defendants; and (3) assets were diverted from Plainview to Energex, leaving Plainview inadequately capitalized and unable to pay outstanding amounts owed to plaintiff.

Judge ARROWOOD concurring in part and dissenting in part.

Appeal by defendants Energex Batteries, Inc. and Bernie R. Erde from order entered 5 April 2007 by Judge David S. Cayer in Burke County Superior Court. Heard in the Court of Appeals 10 January 2008.

*Moore & Van Allen, PLLC, by Anthony T. Lathrop and Michael T. Champion, plaintiff-appellee.*

*Cameron Gilbert, Woodbury, New York, pro hac vice, for defendant-appellants Energex Batteries, Inc. and Bernie R. Erde.*

*No brief filed for defendants Plainview Batteries, Inc. or Russell J. Bleeker.*

TYSON, Judge.

Energex Batteries, Inc., and Bernie R. Erde (collectively, "defendants") appeal from order entered denying their motions to dismiss for lack of personal jurisdiction. We affirm in part, reverse in part, and remand.

**SAFT AM., INC. v. PLAINVIEW BATTERIES, INC.**

[189 N.C. App. 579 (2008)]

## I. Background

Saft America Inc. ("plaintiff"), is a corporation engaged in the manufacture of batteries and other energy storage cells. Plaintiff conducts its business in Burke County, North Carolina. Plainview Batteries, Inc. ("Plainview"), and Energex Batteries, Inc. ("Energex"), are also involved in the battery and energy storage business. Plainview and Energex are corporations organized under the laws of the state of New York. Bernie R. Erde ("Erde") served as President and CEO of Plainview and Vice President of Energex. Erde owns forty-nine (49%) percent of Plainview's stock and fifty-one percent (51%) of Energex's stock. Russell Bleeker ("Bleeker") served as a corporate officer for both Plainview and Energex. In addition to overlapping management and ownership, Plainview and Energex share a common mailing address in Plainview, New York.

Beginning in the 1990s, plaintiff established a business relationship with Plainview in which plaintiff sold Plainview several million dollars worth of goods. Until 2005, plaintiff dealt with Erde as Plainview's representative. In January 2005, Bleeker became more involved in the transactions between Plainview and plaintiff. Contracts and purchase orders executed by the parties identify Plainview as the purchaser. However, in correspondence with plaintiff, Bleeker and Erde made references to Plainview and Energex, which tended to group the companies together, including the following:

1. The 14 March 2005 email from Bleeker in which he describes himself as V.P. of Business Development (Princi[pal] as well) on the Energex side of the business.

2. The 27 July 2005 email from Erde seeking assurance that Plainview/Energex really gets the best possible price[.]

3. The 15 February 2006 email from Bleeker referring to "business transference and asset purchase of Plainview" by Energex.

Between July and November 2005, the business relationship between the parties became antagonistic due to conflicts over payments Plainview owed to plaintiff. On 20 October 2006, plaintiff filed suit against Plainview, Energex, Erde, and Bleeker, seeking damages under the following claims for relief: (1) recovery of the balance due plus interest, under plaintiff's contracts with Plainview; (2) breach of contract; (3) unjust enrichment; and (4) piercing the corporate veil.

SAFT AM., INC. v. PLAINVIEW BATTERIES, INC.

[189 N.C. App. 579 (2008)]

Plaintiff's complaint identified seven specific purchase orders for which plaintiff was owed "$244,850.54 plus accrued interest[.]" Plaintiff contended that when it tried to obtain the amounts owed under its contracts with Plainview, Bleeker told plaintiff's representatives that Energex had "acquired the assets of Plainview and that Plainview had been dissolved." Bleeker asserted the purchase of Plainview's assets by Energex served to insulate Energex from any responsibility for Plainview's debt due to plaintiff. Plaintiff also alleged that during 2005 "Erde and Bleeker repeatedly represented Energex and Plainview to be parts of the same organization, at least with regard to purchasing goods from [plaintiff.]"

Bleeker filed an answer admitting that he was an officer of Energex, and that personal jurisdiction was properly exercised by North Carolina. Bleeker conceded that he had "made representations regarding the connections of Plainview and Energex[,]" but denied specifically saying the companies were "part of the same legal corporate organization." Bleeker also admitted that "Plainview owes some amount [of money] to [plaintiff] for past due accounts." Bleeker denied any individual personal liability under plaintiff's claim seeking to pierce the corporate veil. Plainview filed an answer and denied the material allegations of the complaint. Plainview also filed a motion to dismiss for lack of personal jurisdiction, which it later withdrew. Neither Bleeker nor Plainview are parties to this appeal.

Defendants filed motions to dismiss for lack of personal jurisdiction and attached an affidavit by Erde to each motion. On 5 April 2007, the trial court denied the motions by Plainview, Energex, and Erde to dismiss for lack of personal jurisdiction, in an order concluding in pertinent part that:

2. Plaintiff has properly pleaded and alleged a claim for piercing the corporate veil against the Defendants in this Matter;

3. This Court has personal Jurisdiction over the Defendants; and

4. The Court's exercise of personal jurisdiction over these Defendants does not violate their rights to Due Process.

Defendants appeal.

## II. Issue

Defendants argue the trial court erred by denying their motions to dismiss for lack of personal jurisdiction.

### III.  Standard of Review

"The standard of review of an order determining personal jurisdiction is whether the findings of fact by the trial court are supported by competent evidence in the record; if so, this Court must affirm the order of the trial court." *Replacements, Ltd. v. Midwesterling*, 133 N.C. App. 139, 140-41, 515 S.E.2d 46, 48 (1999) (citations omitted).

Either party may request that the trial court make findings regarding personal jurisdiction, but in the absence of such request, findings are not required. . . . Where no findings are made, proper findings are presumed, and our role on appeal is to review the record for competent evidence to support these presumed findings.

*Bruggeman v. Meditrust Acquisition Co.*, 138 N.C. App. 612, 615, 532 S.E.2d 215, 217-18 (citations omitted), *disc. rev. denied*, 353 N.C. 261, 546 S.E.2d 90 (2000).

### IV.  Personal Jurisdiction

This Court has stated:

The resolution of the question of *in personam* jurisdiction involves a two-fold determination: (1) do the statutes of North Carolina permit the courts of the jurisdiction to entertain this action against defendant, and (2) does the exercise of this power by the North Carolina courts violate due process of law.

*Green Thumb Industry v. Nursery, Inc.*, 46 N.C. App. 235, 239-40, 264 S.E.2d 753, 755 (1980) (citing *Dillon v. Funding Corp.*, 291 N.C. 674, 231 S.E.2d 629 (1977)). N.C. Gen. Stat. § 1-75.4 (2005) sets forth twelve grounds upon which a court may assert personal jurisdiction over a person.

Defendants argue no statutory grounds exist for the trial court's assertion of personal jurisdiction over them, and argue the trial court's exercise of personal jurisdiction over them "violates their due process rights."

If the exercise of personal jurisdiction is challenged by a defendant, a trial court may hold an evidentiary hearing including oral testimony or depositions or may decide the matter based on affidavits. If the court takes the latter option, the plaintiff has the initial burden of establishing *prima facie* that jurisdiction is proper. Of course, this procedure does not alleviate the plaintiff's ulti-

mate burden of proving personal jurisdiction at an evidentiary hearing or at trial by a preponderance of the evidence.

*Bruggeman*, 138 N.C. App. at 615, 532 S.E.2d at 217 (internal citations omitted).

Here, the trial court decided the issue of personal jurisdiction without an evidentiary hearing. Plaintiff was required to show the uncontroverted allegations of its complaint were sufficient to state a claim for personal jurisdiction. *Id.*, at 615, 532 S.E.2d at 217-18. *See also Spinks v. Taylor*, 303 N.C. 256, 264, 278 S.E.2d 501, 505-06 (1981) (citation and quotation omitted) ("A verified complaint may be treated as an affidavit if it (1) is made on personal knowledge, (2) sets forth such facts as would be admissible in evidence, and (3) shows affirmatively that the affiant is competent to testify to the matters stated therein.").

Plaintiff asserts that personal jurisdiction is proper under several statutory provisions including: (1) N.C. Gen. Stat. § 1-75.4(1)d, permitting exercise of jurisdiction over a defendant "engaged in substantial activity within this State, whether such activity is wholly interstate, intrastate, or otherwise" and (2) N.C. Gen. Stat. § 1-75.4(5)d, which states jurisdiction is proper where action "[r]elates to goods, documents of title, or other things of value shipped from this State by the plaintiff to the defendant on his order or direction." The allegations of plaintiff's complaint support the exercise of personal jurisdiction under either provision, particularly when considered in the context of plaintiff's claim to pierce the corporate veil.

Having found that "the statutes of North Carolina permit the courts of this jurisdiction to entertain this action against defendant[s][,]" we now decide whether "the exercise of this power" would violate due process. *Dillon*, 291 N.C. at 675, 231 S.E.2d at 630. Our Supreme Court has stated:

> The constitutional standard to be applied in determining whether a State may assert personal jurisdiction over a nonresident defendant is found in the landmark case of *International Shoe Co. v. Washington*, 326 U.S. 310, 90 L.Ed. 95, 66 S.Ct. 154 (1945): "[D]ue process requires only that in order to subject a [nonresident] defendant to a judgment in personam, . . . he have certain minimum contacts with [the forum State] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.' "

*Buying Group, Inc. v. Coleman*, 296 N.C. 510, 515, 251 S.E.2d 610, 614 (1979).

> To generate minimum contacts, the defendant must have purposefully availed itself of the privilege of conducting activities within the forum state and invoked the benefits and protections of the laws of North Carolina. The relationship between the defendant and the forum state must be such that the defendant should reasonably anticipate being haled into a North Carolina court. The facts of each case determine whether the defendant's activities in the forum state satisfy due process.

*Tejal Vyas, LLC v. Carriage Park Ltd. P'ship*, 166 N.C. App. 34, 38-39, 600 S.E.2d 881, 885-86 (2004) (internal citations and quotations omitted), *aff'd*, 359 N.C. 315, 608 S.E.2d 751 (2005). Several factors are reviewed in determining minimum contacts including: "1) the quantity of the contacts; 2) the nature and quality of the contacts; 3) the source and connection of the cause of action with those contacts; 4) the interest of the forum state; and 5) the convenience to the parties." *Fox v. Gibson*, 176 N.C. App. 554, 560, 626 S.E.2d 841, 845 (2006) (citation omitted). These factors must be considered "in light of fundamental fairness and the circumstances of the case." *Id.* (citation omitted).

### 1. Defendant Erde

[1] In Erde's affidavit, he admitted that: (1) he was the president of Energex and vice president of Plainview and (2) he had visited plaintiff's factory in North Carolina "in [his] role as a corporate officer of Plainview Batteries, Inc." Erde also stated that "any dealings I had with Plaintiff were solely in my capacity as an officer of Plainview Batteries Inc." Erde argues he lacked sufficient minimum contacts for the trial court to exercise personal jurisdiction over him as an individual based upon the acts alleged in plaintiff's complaint. We agree.

"[P]ersonal jurisdiction over an individual officer or employee of a corporation may not be predicated merely upon the corporate contacts with the forum." *Robbins v. Ingham*, 179 N.C. App. 764, 771, 635 S.E.2d 610, 615 (2006) (citing *Godwin v. Walls*, 118 N.C. App. 341, 348, 455 S.E.2d 473, 479 (1995)), *disc. rev. denied*, 361 N.C. 221, 642 S.E.2d 448 (2007). Corporate officers are subject to personal jurisdiction when "in addition to their roles as officers, [they] complete[] an act in *their individual capacities . . . .*" *Id.* (emphasis supplied).

In *Robbins*, this Court distinguished the case before it from prior precedent now cited in the dissenting opinion:

> Plaintiffs cite three cases in their brief in an attempt to prove that Hegg's, Ingham's and Trinity Court's contacts should be imputed to Gamble: *Better Business Forms, Inc.*, 120 N.C. App. 498, 462 S.E.2d 832 [(1995)]; *Centura Bank* [*v. Pee Dee Express, Inc.*], 119 N.C. App. 210, 458 S.E.2d 15 [(1995)]; and *Buying Group, Inc. v. Coleman*, 296 N.C. 510, 251 S.E.2d 610 (1979). *All three of these cases are easily distinguished from the instant case because in all three cases the individual defendants, in addition to their roles as officers, completed an act in their individual capacities that would make them subject to personal jurisdiction.* For example, in *Better Business Forms, Inc.*, we found sufficient minimum contacts existed as to two individual defendants who owned a corporate buyer, but we noted that both individuals had obligated themselves to purchase a business by signing personal guarantees. *Better Business Forms, Inc.*, 120 N.C. App. at 501, 462 S.E.2d at 834. Similarly, in *Centura Bank*, we found individual defendants subject to personal jurisdiction in North Carolina, but we also noted that the individuals were individual guarantors. *Centura Bank*, 119 N.C. App. at 214, 458 S.E.2d at 19. Finally, in *Buying Group, Inc.*, the Supreme Court of North Carolina decided the State had personal jurisdiction over an individual defendant partly because the defendant had signed a promissory note in his individual capacity, had attended trade shows in North Carolina, and had a continuing relationship with a North Carolina corporation. *Buying Group, Inc.*, 296 N.C. at 516, 251 S.E.2d at 614.
>
> In the instant case, a review of the record does not compel us to conclude that North Carolina has personal jurisdiction over Gamble. *Unlike the cases discussed, we believe the facts of this case do not show Gamble acting in his individual capacity to a point where North Carolina has personal jurisdiction over Gamble.* We affirm the trial court.

*Id.* at 772, 635 S.E.2d at 616 (emphasis supplied).

This Court recently addressed this issue and held under markedly similar facts that a defendant lacked sufficient minimum contacts with North Carolina to satisfy the due process prong of personal jurisdiction. *See Rauch v. Urgent Care Pharm., Inc.*, 178 N.C. App. 510, 518-19, 632 S.E.2d 211, 217-18 (2006). In *Rauch*, the individual defend-

ant's actions in the forum state were performed in his official capacity as president of the corporate defendant:

> Defendant Burns signed and submitted defendant Urgent Care's 2002 application to the North Carolina Board of Pharmacy, seeking privileges for Urgent Care to conduct pharmacy business in this state, however he signed the application in his capacity as president of defendant Urgent Care. There is no evidence in the record which suggests that defendant Burns participated in the filling of any prescriptions or compounding activities at Urgent Care during 2002 when the contaminated methylprednisolone injections were compounded. Similarly, defendant Burns had no direct involvement with the day-to-day operations of defendant Urgent Care in 2002. He also had no contact with anyone in North Carolina regarding Urgent Care's compounding methylprednisolone injections, and in fact, was unaware that Urgent Care was compounding the drug until after Urgent Care was notified about the possible contamination. Defendant Burns then spoke, via telephone, to physicians and other individuals in North Carolina regarding the investigation and the recall of the contaminated injections, however he did so in his capacity as president of defendant Urgent Care. Defendant Burns also does not own any real or personal property in this state, nor has he lived here since he was eighteen years old. The evidence does suggest that he may have visited the state for personal reasons prior to 2002, and that during such visit he delivered Urgent Care's application to the North Carolina Pharmacy Board.

*Id.* at 518, 632 S.E.2d at 217-18. Upon these facts, this Court held that "defendant Burns did not have sufficient minimum contacts with the state of North Carolina, such that a court in our state could exercise personal jurisdiction over him individually without violating his due process rights." *Id.* at 518, 632 S.E.2d at 217.

We hold the analyses in *Robbins* and *Rauch* are directly on point to the facts at bar and are clearly distinguishable from the cases cited in the dissenting opinion. *See Buying Group, Inc.*, 296 N.C. at 510, 251 S.E.2d at 614; *Centura Bank, Inc.*, 119 N.C. App. at 213, 458 S.E.2d at 18.

Here, plaintiff wholly failed to allege any act Erde committed occurred within his individual capacity to subject him to personal jurisdiction. The trial court erred by denying Erde's motion to dismiss. That portion of the trial court's order is reversed.

## 2. Defendant Energex

[2] Energex argues that it cannot be subject to personal jurisdiction because the relevant contracts, correspondence, orders, and invoices all reference Plainview rather than Energex. "However, plaintiff does not allege that [Energex] had such contacts, but rather, asserts jurisdiction based on disregard of the corporate entity, or veil-piercing." *Strategic Outsourcing, Inc. v. Stacks*, 176 N.C. App. 247, 252, 625 S.E.2d 800, 803 (2006).

### i. Piercing the Corporate Veil

Where the corporate veil is pierced, personal jurisdiction may be imputed to a defendant entity on the basis of the actions of its alter ego. "Our courts will 'disregard the corporate form' and 'pierce the corporate veil' where [a party] exercises actual control over a corporation, operating it as a mere instrumentality or tool." *Becker v. Graber Builders, Inc.*, 149 N.C. App. 787, 790, 561 S.E.2d 905, 908 (2002).

Our Supreme Court has articulated the instrumentality rule as follows:

[W]hen . . . the corporation is so operated that it is a mere instrumentality or *alter ego* of the sole or dominant shareholder and a shield for his activities in violation of the declared public policy or statute of the State, the corporate entity will be disregarded and the corporation and the shareholder treated as one and the same person, it being immaterial whether the sole or dominant shareholder is an individual or another corporation.

*Henderson v. Finance Co.*, 273 N.C. 253, 260, 160 S.E.2d 39, 44 (1968).

To impose liability based upon the instrumentality rule, three elements are required to be present:

(1) Control, not mere majority or complete stock control, but complete domination, not only of finances, but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own; and

(2) Such control must have been used by the defendant to commit fraud or wrong, to perpetrate the violation of a statutory or other positive legal duty, or a dishonest and unjust act in contravention of plaintiff's legal rights; and

(3) The aforesaid control and breach of duty must proximately cause the injury or unjust loss complained of.

*Strategic Outsourcing*, 176 N.C. App. at 253, 625 S.E.2d at 804 (emphasis omitted) (quoting *Glenn v. Wagner*, 313 N.C. 450, 455, 329 S.E.2d 326, 330 (1985)).

"Factors to consider in determining whether to pierce the corporate veil include: (1) inadequate capitalization; (2) non-compliance with corporate formalities; (3) complete domination and control of the corporation so that it has no independent identity; and (4) excessive fragmentation of a single enterprise into separate corporations." *State ex rel. Cooper v. Ridgeway Brands Mfg.*, 184 N.C. App. 613, 621-22, 646 S.E.2d 790, 797 (2007) (citing *Glenn*, 313 N.C. at 455, 329 S.E.2d at 330-31).

### ii. Plaintiff's Burden

"[When] jurisdiction is challenged [by a defendant, the] plaintiff has the burden of proving *prima facie* that a statutory basis for jurisdiction exists." *Inspirational Network, Inc. v. Combs*, 131 N.C. App. 231, 235, 506 S.E.2d 754, 758 (1998) (citation and quotation omitted). "Where unverified allegations in the complaint meet plaintiff's 'initial burden of proving the existence of jurisdiction . . . *and defendants . . . do not contradict plaintiff's allegations in their sworn affidavit,*' such allegations are accepted as true and deemed controlling." *Id.* (quoting *Bush v. BASF Wyandotte Corp.*, 64 N.C. App. 41, 45, 306 S.E.2d 562, 565 (1983)) (emphasis supplied). "When the allegations in a plaintiff's complaint, taken as true, are sufficient to state a claim for piercing the corporate veil, the trial court's grant of defendant's motion to dismiss is improper." *State ex rel. Cooper*, 184 N.C. App. at 622, 646 S.E.2d at 793.

The allegations of plaintiff's complaint include, *inter alia*, the following:

46. Upon information and belief, Defendants Erde and/or Bleeker as officers, principal agents and primary shareholders of Energex and Plainview have failed to observe the proper corporate formalities as required by applicable corporate law.

47. Upon information and belief, Defendants Erde and/or Bleeker hold complete domination, not only of finances, but of policy and business practice, in Energex and Plainview.

48. Upon information and belief, Defendants Erde and/or Bleeker have used this control and domination of Energex and Plainview

to conceal and/or divert assets away from Plainview to themselves and to Plainview's alter-ego Energex, thereby leaving Plainview inadequately capitalized and causing Plainview to default on its obligations to SAFT.

49. Upon information and belief, Erde and/or Bleeker have fraudulently concealed and/or diverted Plainview's assets that would otherwise have been or should have been available to pay outstanding amounts owed to SAFT.

50. Upon information and belief, Plainview's failure to pay the outstanding amounts owed to SAFT was caused by the actions of Erde and/or Bleeker, in particular their diverting assets from Plainview for personal gain or to the benefit of Plainview's alter-ego Energex. The actions of Erde and Bleeker were dishonest, unjust and in contravention of SAFT's legal rights.

51. The actions taken by Erde and/or Bleeker amount to a use of Plainview and/or Energex as shields for activities in express violation of applicable corporate law.

Erde submitted an affidavit in support of Energex's motion to dismiss for lack of personal jurisdiction. Erde's affidavit stated that "Energex has never had any dealings with the Plaintiff" and that all transactions between the parties were made on behalf of Plainview, not Energex. Erde's affidavit also makes the conclusory statement that "Energex is an independent corporation, completely and totally separate from Plainview Batteries, Inc., also an independent New York corporation . . . These entities are separate corporations, independent of one another."

Erde's generalized allegation that Plainview and Energex are independent entities does not state a fact within Erde's personal knowledge, but is a conclusion to be drawn on the basis of factual allegations. *See, e.g., East Mkt. St. Square, Inc. v. Tycorp Pizza IV, Inc.*, 175 N.C. App. 628, 636, 625 S.E.2d 191, 198 (2006) (discussing the "court's findings of fact regarding the extent of [defendant's] control over [codefendant]" and holding that this Court "must now ask whether these findings of fact support the trial court's conclusions of law that [codefendant] was the alter ego and mere instrumentality of the individual defendant[].").

As a conclusion rather than a statement of fact, Erde's contention that the two corporations are "completely separate and independent"

was properly ignored by the trial court. "As stated in 3 Am. Jur. 2d, *Affidavits* § 13 . . . Statements in affidavits as to opinion, belief, or conclusions of law are of no effect.' " *Lemon v. Combs*, 164 N.C. App. 615, 622, 596 S.E.2d 344, 348-49 (2004). *See also, e.g., Ward v. Durham Life Ins. Co.*, 90 N.C. App. 286, 289, 368 S.E.2d 391, 393 (1988) (stating trial courts may not consider legal conclusions stated in an affidavit).

The assertions in Erde's affidavit do not contradict plaintiff's allegations that: (1) defendants violated certain corporate laws and formalities; (2) the individual defendants exercised control over the finances, policies, and business practices of both corporate defendants; and (3) assets were diverted from Plainview to Energex, leaving Plainview inadequately capitalized.

We hold that the uncontradicted allegations of plaintiff's complaint sufficiently state a basis for a claim of piercing the corporate veil, which allows the trial court to exercise personal jurisdiction over Energex. The trial court properly concluded that plaintiff had sufficiently alleged a claim for piercing the corporate veil. The trial court properly denied Energex's motion to dismiss. *State ex rel. Cooper*, 184 N.C. App. at 622, 646 S.E.2d at 797. The merits of plaintiff's claims, if any, are not before us. Our holding is solely limited to the jurisdictional issue. This assignment of error is overruled.

## V.  Conclusion

Plaintiff wholly failed to allege in its complaint that any act committed by Erde occurred in his individual capacity to subject him to personal jurisdiction. The trial court erred by denying Erde's motion to dismiss. That portion of the trial court's order is reversed.

The uncontradicted allegations in plaintiff's complaint regarding Energex are sufficient to state a claim for piercing the corporate veil. The trial court properly denied Energex's motion to dismiss. That portion of the trial court's order is affirmed. The trial court's order is affirmed in part, reversed in part, and remanded for further proceedings not inconsistent with this opinion.

Affirmed in Part; Reversed in Part; and Remanded.

Judge JACKSON concurs.

Judge ARROWOOD dissents by separate opinion.

ARROWOOD, Judge, concurring in part and dissenting in part.

I concur with the majority holding insofar as it affirms the trial court's denial of Defendant Energex's motion to dismiss for lack of personal jurisdiction. However, I believe that personal jurisdiction is also properly exercised over Defendant Erde. Accordingly, I respectfully dissent from the majority's reversal of the court's denial of Erde's motion to dismiss for lack of personal jurisdiction.

The dispositive issue is whether Erde had the requisite "minimum contacts" with North Carolina such that the exercise of personal jurisdiction over him does not violate his right to due process under the U.S. Constitution. "Whether minimum contacts are present is determined not by using a mechanical formula or rule of thumb but by ascertaining what is fair and reasonable under the circumstances. However, 'in each case, there must be some act by which the defendant purposefully avails himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws[.]' " *Better Business Forms v. Davis*, 120 N.C. App. 498, 500, 462 S.E.2d 832, 833-34 (1995) (quoting *Tom Togs, Inc. v. Ben Elias Industries Corp.*, 318 N.C. 361, 365, 348 S.E.2d 782, 786 (1986)). In the instant case, I believe it is beyond dispute that Erde "purposefully avail[ed] himself of the privilege of conducting activities within [North Carolina]," thus subjecting himself to personal jurisdiction here.

The majority states that "plaintiff wholly failed to allege any act committed by Erde occurred within his individual capacity to subject him to personal jurisdiction." I disagree. Allegations in Plaintiff's complaint that were not contradicted by Erde's affidavit include, in relevant part, the following:

4. . . . [A]t all times alleged herein, Erde was Chief Operating Officer, Director and principal shareholder of Plainview and Chief Executive Officer, majority and/or principal shareholder of Energex and a resident of New York County, New York.

. . . .

6. This court possesses jurisdiction over Defendants based upon their continuous and systematic contacts with North Carolina, including, but not limited to:

(a) Erde and Bleeker, as officers and principal agents of Plainview and Energex, visited SAFT Ltd. in North

Carolina to tour the facilities and to negotiate a sales agreement between SAFT, Plainview and Energex;

(b) Erde and Bleeker submitted multiple purchase orders to SAFT in North Carolina on behalf of and as officers and principal agents of Plainview and Energex;

(c) Plainview and Energex transmitted payments to SAFT which were received by SAFT in North Carolina;

(d) Erde and Bleeker on behalf of and as officers and principal agents of Plainview and Energex transmitted correspondence to SAFT which was received by SAFT in North Carolina;

. . . .

(9) Plainview and SAFT have had a business relationship dating back to 1996 during which time SAFT has supplied Plainview with a total of over five million dollars worth of goods.

(10) Until January, 2005, SAFT representatives communicated primarily with Erde, who represented himself to be Chief Operating Officer and owner of Plainview. Erde acted as principal agent of Plainview with the authority to make all business decisions on behalf of Plainview relative to purchases from SAFT.

. . . .

(14) In January, 2005, Bleeker asked SAFT representatives to meet with him and Erde to discuss renegotiating the existing credit agreement between SAFT and Plainview[.] . . . During that meeting, and in other discussions, both Bleeker and Erde informed SAFT that Plainview and/or Energex was planning to bid for various large government contracts and that the company would look to SAFT to meet its increased supply needs if SAFT in turn would raise Plainview's credit limit and extend the current repayment terms. . . .

(15) Accordingly, in February, 2005, Erde, Bleeker and certain SAFT representatives met in New York to discuss new credit terms and Plainview and/or Energex's increased supply needs[.]

(16) After the February, 2005 Meeting, and based on the representations made by Erde and Bleeker regarding Plainview

and Energex's new business model and increased sales, SAFT raised Plainview's credit limit to $200,000 and extended repayment terms[.]

. . . .

(18) Upon information and belief, between February, 2005 and December, 2005, SAFT supplied Plainview with over $1,183,000.00 worth of goods. Orders for these goods were always placed by or on behalf of Plainview, regardless of whether the goods were to be used by Plainview or Energex.

As discussed in the majority opinion, Erde admitted in his affidavit that he was the president of Energex and vice president of Plainview, and that he had visited Plaintiff's factory in North Carolina "in [his] role as a corporate officer of Plainview Batteries, Inc." Erde's affidavit and the uncontroverted allegations of Plaintiff's complaint show that Plaintiff had a long-standing business relationship with Plainview; that Erde is a corporate officer of both Plainview and Engergex; that Erde visited North Carolina at least once in connection with this commercial relationship; and that Erde was personally involved in negotiating and carrying out the contracts that gave rise to the instant lawsuit.

Erde's connections to North Carolina arose from his actions as officer and principal shareholder of Plainview and Energex. On this basis, Erde asserts that, because his "alleged acts in this case were undertaken in his official capacity and not as an individual," he "lacked sufficient minimum contacts to permit the exercise of personal jurisdiction over him as an individual." Erde contends that "any dealings I had with Plaintiff were solely in my capacity as an officer of Plainview Batteries, Inc." and that without evidence that he "committed any act in his individual capacity that was outside Plainview's alleged corporate acts in North Carolina," he cannot be subject to personal jurisdiction. Erde's position, which was accepted by the majority, apparently is that actions taken by an individual in the course of his employment or in his "official" capacity do not "count" as part of a defendant's contacts with the forum state. I do not believe that this correctly states the law in North Carolina.

It is certainly true that, as noted by the majority, "personal jurisdiction over an individual officer or employee of a corporation may not be predicated merely upon the corporate contacts with the forum." *Robbins v. Ingham*, 179 N.C. App. 764, 771, 635 S.E.2d 610,

615 (2006) (citing *Godwin v. Walls*, 118 N.C. App. 341, 348, 455 S.E.2d 473, 479 (1995)), *disc. review denied*, 361 N.C. 221, 642 S.E.2d 448 (2007). To base personal jurisdiction on the bare fact of a defendant's status as, *e.g.*, corporate officer or agent, would violate his due process rights. Accordingly, North Carolina precedent has consistently required that, before a defendant is subject to personal jurisdiction, there be evidence that he personally took some action subjecting him to North Carolina's jurisdiction.

For example, in *Rauch v. Urgent Care Pharm., Inc.*, 178 N.C. App. 510, 632 S.E.2d 211 (2006), a case cited by the majority, the plaintiff sued several individual and corporate defendants for injuries arising from alleged negligence in compounding a medication. The Plaintiff in *Rauch* attempted to exert personal jurisdiction over Defendant Burns on the basis of his being president of one of the corporate Defendants, and having signed the corporation's application to conduct business in North Carolina. However, there was "no evidence in the record which suggests that defendant Burns participated in" the allegedly negligent activities. The record indicated that "defendant Burns had no direct involvement with the day-to-day operations of [the corporate] defendant," that he "had no contact with anyone in North Carolina regarding" the events at issue, and that "in fact, [he] was unaware" of these events until after they were discovered by others. On these facts, this Court properly held that "defendant Burns did not have sufficient minimum contacts with the state of North Carolina, such that a court in our state could exercise personal jurisdiction over him individually without violating his due process rights." *Rauch*, 178 N.C. App. at 518, 632 S.E.2d at 217.

Similarly, in *Robbins v. Ingham*, also cited by the majority, the individual Defendant was an officer and principal shareholder of a corporate defendant. However, there was no allegation or evidence that the he had any contact with Plaintiffs or participated in the actions giving rise to the claims. This Court held that personal jurisdiction could not be exercised based <u>solely</u> upon defendant's status as a director and principal shareholder of the corporate defendant:

> [P]ersonal jurisdiction over an individual officer or employee of a corporation may not be predicated merely upon the corporate contacts with the forum. The minimum contacts analysis "focuses on the actions of the non-resident defendant over whom jurisdiction is asserted, and not on the unilateral actions of some other entity."

*Robbins*, 179 N.C. App. at 771, 635 S.E.2d at 615-16 (quoting *Centura Bank v. Pee Dee Express, Inc.*, 119 N.C. App. 210, 213, 458 S.E.2d 15, 18 (1995)).

I agree with the majority that both *Rauch* and *Robbins* were correctly decided on the facts of those cases, on the grounds that in both cases the individual defendant's connection to North Carolina was limited to his status as an agent, employee, or officer of a corporation or business. However, it is important to note that these cases did not hold either that (1) personal jurisdiction over a defendant may only be based on the contacts he has with the state in the course of his private life; or, conversely, that (2) in assessing personal jurisdiction we may not "count" a defendant's contacts if they were made as part of his employment. Indeed, relevant precedent consistently interprets the requirement that a defendant act in his "individual capacity" to mean only that he must personally have minimum contacts with North Carolina, and not that these contacts must arise from his "personal life."

This is clearly demonstrated by this Court's holding in *Godwin v. Walls*. In *Godwin*, the nonresident individual defendant was a truck driver who was a resident of Maryland and was employed by a North Carolina trucking corporation. While operating a truck in Virginia, defendant was involved in an accident that killed two North Carolina residents. Plaintiffs sued several defendants, including the truck driver, who argued that North Carolina had no personal jurisdiction over him. This Court first considered the jurisdictional requirements of Plaintiffs' claims for wrongful death or injury to property, which require that a defendant's tortious conduct occur in North Carolina. The accident occurred while defendant was working for a North Carolina company. However, this Court held that because the status of the company could not be imputed to him, North Carolina lacked personal jurisdiction over the defendant as regards the claims requiring in-state actions. In contrast, jurisdiction over Plaintiffs' claims for negligent infliction of emotional distress and loss of consortium, although requiring injury to a North Carolina plaintiff, do not require that the claims be based on tortious conduct occurring in the state. Consequently, this Court held that personal jurisdiction could properly be exercised over defendant for these claims, based on actions personally taken by the defendant:

> [T]he emphasis upon the agency relationship ignores the issue for resolution in this appeal, namely, the exercise of personal jurisdiction by North Carolina courts over [the individual defendant],

**SAFT AM., INC. v. PLAINVIEW BATTERIES, INC.**

[189 N.C. App. 579 (2008)]

not [his corporate employer.] While a corporate entity is liable for any wrongful act or omission of an agent acting with proper authority, it does not follow an agent may be held liable under the jurisdiction of our courts for acts or omissions allegedly committed by the corporation. . . . [P]laintiffs may not assert jurisdiction over a corporate agent without some affirmative act committed in his individual official capacity.

*Godwin*, 118 N.C. App. at 348, 455 S.E.2d at 479 (citations omitted). Significantly, this Court refers to a defendant's "individual *official* capacity." It is also notable that the pertinent actions of the *Godwin* defendant were all taken as part of his employment.

In another case, *Carson v. Brodin*, 160 N.C. App. 366, 585 S.E.2d 491 (2003), the plaintiffs, North Carolina residents, sued Virginia defendants for damages arising from the breach of a contract for construction of a vacation home in Virginia. When the nonresident individual defendant contested personal jurisdiction, this Court upheld the exercise of personal jurisdiction, based upon the defendant's commercial transactions with the plaintiffs:

Here, defendant has engaged in sufficient contacts with North Carolina. He entered into a contract with North Carolina residents that those residents executed in North Carolina. . . . By negotiating within the state and entering into a contract with North Carolina residents, defendant purposefully availed himself of the privilege of conducting activities within North Carolina with the benefits and protection of its laws. Defendant's actions in contracting with North Carolina residents establish minimum contacts for specific jurisdiction because the actions are directly related to the basis of plaintiffs' claim.

*Id.* at 372, 585 S.E.2d at 496 (citing *Hanson v. Denckla*, 357 U.S. 235, 253, 2 L. Ed. 2d 1283, 1298 (1958)). Thus, North Carolina precedent does not hold that personal jurisdiction can only be predicated upon a defendant's contacts with North Carolina in his "personal life."

In addition,

North Carolina common law interprets G.S. § 1-75.4 to extend jurisdiction to the full extent permitted by the Due Process Clause of the U.S. Constitution. In this regard, [it is significant] that in *Calder v. Jones*, 465 U.S. 783, 79 L. Ed. 2d 804 (1984), the United States Supreme Court expressly rejected the argument made by the instant Defendants. The *Calder* defend-

ant, a Florida resident and newspaper reporter, challenged California's exercise of personal jurisdiction over him on the basis that, notwithstanding his contacts with California, principles of due process prohibited exercise of jurisdiction on the basis of his actions as an employee of the newspaper. The United States Supreme Court disagreed:

> "Petitioners are correct that their contacts with California are not to be judged according to their employer's activities there. On the other hand, their status as employees does not somehow insulate them from jurisdiction. Each defendant's contacts with the forum State must be assessed individually. . . . In this case, petitioners are primary participants in an alleged wrongdoing intentionally directed at a California resident, and jurisdiction over them is proper on that basis."

*Brown v. Refuel Am., Inc.*, 186 N.C. App. 631, 638, 652 S.E.2d 389, 394 (2007) (quoting *Calder*, 465 U.S. at 790, 79 L. Ed. 2d at 813).

Furthermore, where a defendant is an officer and principal shareholder of a corporation, the North Carolina Supreme Court has explicitly directed that we consider his corporate actions in determining personal jurisdiction:

> We hold that where, as in this case, defendant is a principal shareholder of the corporation and conducts business in North Carolina as principal agent for the corporation, then his corporate acts may be attributed to him for the purpose of determining whether the courts of this State may assert personal jurisdiction over him.

*United Buying Group, Inc. v. Coleman*, 296 N.C. 510, 515, 251 S.E.2d 610, 614 (1979).

"This Court is bound by decisions of the North Carolina Supreme Court." *State v. Glynn*, 178 N.C. App. 689, 697, 632 S.E.2d 551, 557, *disc. review denied*, 360 N.C. 651, 637 S.E.2d 180 (2006) (citations omitted). "Moreover, this Court has no authority to overrule decisions of our Supreme Court and we have the responsibility to follow those decisions 'until otherwise ordered by the Supreme Court.' " *Dunn v. Pate*, 106 N.C. App. 56, 60, 415 S.E.2d 102, 104 (1992) (quoting *Cannon v. Miller*, 313 N.C. 324, 327 S.E.2d 888 (1985), *overturned on other grounds by Dunn v. Pate*, 334 N.C. 115, 118, 431 S.E.2d 178, 180 (1993)). *Buying Group*, decided by the North Carolina Supreme Court, has never been overturned and remains the law.

Consequently, in our determination of whether personal jurisdiction is properly exercised over Erde, we should impute to Erde his corporate actions as principal shareholder and officer of Plainview and its alter ego, Energex.

This Court followed *Buying Group* in *Brickman v. Codella*, 83 N.C. App. 377, 350 S.E.2d 164 (1986). In *Brickman*, the North Carolina plaintiff sued a nonresident defendant to recover on a note under which defendant guaranteed payment of a debt. The record showed that the defendant "made a minimum of one phone call and two mailings to [plaintiff] regarding his business proposal", *Id.* at 382, 350 S.E.2d at 167, and that "he mailed four monthly payments due under the lease to the [plaintiffs]." *Id.* Noting that the defendant had "transacted business in North Carolina as principal agent for the company of which he is president", *Id.* at 381, 350 S.E.2d at 166, and relying on "our Supreme Court's analysis in *United Buying Group, Inc. v. Coleman*, 296 N.C. 510, 251 S.E.2d 610 (1979)," *Id.*, this Court attributed to Defendant his actions as president of the corporation involved in the underlying controversy for purposes of analyzing personal jurisdiction, and upheld the exercise of personal jurisdiction over the defendant.

In sum, under North Carolina precedent the determination of whether personal jurisdiction is properly exercised over a defendant <u>does not</u> exclude consideration of defendant's actions merely because they were undertaken in the course of his employment. In particular, the corporate actions of a defendant who is also an officer and principal shareholder of a corporation are imputed to him for purposes of deciding the issue of personal jurisdiction. On the other hand, personal jurisdiction <u>cannot</u> be based solely on a defendant's employment status as the agent or officer of a company with ties to North Carolina, or on personal connections to North Carolina that fall short of the requisite "minimum contacts."

For example, in *Centura Bank v. Pee Dee Express*, this Court considered four individual nonresident defendants. All four had signed personal guarantees for loans pertaining to the subject of the lawsuit. Two were also officers of the company involved in the suit and had additional contacts with North Carolina. The other two were the spouses of these defendants, with no other contact besides the loan guarantees. This Court first noted:

At the outset we note our Supreme Court has held "where . . . defendant is a principal shareholder of the corporation and con-

ducts business in North Carolina as principal agent for the corporation, then his corporate acts may be attributed to him for the purpose of determining whether the courts of this State may assert personal jurisdiction over him." In the present case [the individual defendants] were officers and the only two shareholders in Pee Dee. . . . Therefore, [their] corporate acts . . . can be imputed to them for the purpose of determining if they had sufficient minimum contacts.

*Centura Bank*, 119 N.C. App. at 214, 458 S.E.2d at 18 (quoting *Buying Group*, 296 N.C. at 515, 251 S.E.2d at 614) (citations omitted). The Court held that jurisdiction was properly exercised over the corporate actors with business activity in North Carolina, but not over their wives who merely signed a guarantee.

It is undisputed that Erde (1) was an officer and principal shareholder in both Plainview and Energex; (2) visited North Carolina at least once to conduct business with Plaintiff; and (3) negotiated the terms of pertinent contracts and was otherwise personally involved in the transactions at issue. "The courts of this State are open to defendant for protection of his activities and to enforce the valid obligations which [Plaintiff] assumed by reason of the contract. The contract was to be performed in North Carolina and has a substantial connection with the State. Applying to these facts the law as interpreted by the Supreme Court of the United States, [I would] hold that assumption of *in personam* jurisdiction over defendant by the courts of this State does not offend traditional notions of fair play and substantial justice within the contemplation of the Due Process Clause of the Fourteenth Amendment and that defendant's contacts with the State are sufficient to satisfy due process requirements." *Chadbourn, Inc. v. Katz*, 285 N.C. 700, 707, 208 S.E.2d 676, 680 (1974).

Because I believe the undisputed allegations of Erde's actions on behalf of Plainview were sufficient to subject him to personal jurisdiction, I respectfully dissent from that part of the majority opinion reversing the denial of Erde's motion to dismiss for lack of personal jurisdiction.