IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA18-537

Filed: 4 December 2018

Mecklenburg County, No. 17 CVS 12148

JOSEPH PADRON, Plaintiff,

v.

BENTLEY MARINE GROUP, LLC, LARRY D. BREHM, KEENAN W. GREEN, and NOEL WINTER, Defendants.

Appeal by defendant Keenan W. Green from order entered 20 March 2018 by Judge Hugh B. Lewis in Mecklenburg County Superior Court. Heard in the Court of Appeals 17 October 2018.

> *Pinto Coates Kyre & Bowers, PLLC, by Jon Ward and Matthew J. Millisor, for plaintiff-appellee.*
>
> *Poyner Spruill LLP, by Karen H. Chapman and John M. Durnovich, for defendant-appellant Keenan W. Green.*

ZACHARY, Judge.

Defendant Keenan W. Green appeals from the trial court's order denying his motion to dismiss plaintiff Joseph Padron's complaint against him for lack of personal jurisdiction. Defendants Bentley Marine Group, LLC, Larry D. Brehm, and Noel Winter are not parties to the instant appeal. We conclude that North Carolina lacks personal jurisdiction over Green in the instant case, and accordingly reverse and remand for entry of an order granting Green's motion to dismiss.

**Background**

Plaintiff filed a complaint on 3 July 2017 against defendants Bentley Marine Group, Brehm, Winter, and Green for damages resulting from a 4 July 2014 boating accident that took place in North Carolina wherein "Plaintiff's left hand was severely injured and disfigured while using a Bentley Industries 2006 Model 240 Cruise pontoon boat." According to the complaint, the Boat was manufactured by Bentley Industries, LLC, "a defunct limited liability company previously organized under the laws of South Carolina." The complaint alleges that the Boat "was a dangerous and defective product at the time it was manufactured and designed, in that it failed to take account for an inherently deadly flaw in its design—a so-called 'pinch point' that led to the loss of Plaintiff's finger." The complaint further alleges that "Bentley Industries, LLC failed to provide any adequate warning, instruction, or recall related to the dangerous and defective manufacture and design of the Boat, although it knew or should have known of that dangerous and defective condition and had the opportunity to provide timely and effective warning."

The complaint alleges that sometime in 2008, about two years after Bentley Industries manufactured the Boat, "there was some sort of transaction involving Bentley Industries, LLC and Defendants [Bentley Marine Group, Brehm, Green, and/or Winter], in which one or more of said Defendants purchased Bentley Industries, LLC, including both its assets and liabilities." The complaint alleges that defendants, "by virtue of purchasing Bentley Industries, LLC, at a time when the

dangerous and defective nature of the Boat and other similar boats was or should have been evident, . . . are legally liable for all claims based upon the negligent and defective manufacture and design of the Boat," and further, that prior to the date that plaintiff was injured, defendants were "aware of the negligent and defective manufacture and design of the Boat . . . , yet none of the Defendants . . . issued any warning, let alone any proper, adequate, or effective warning, regarding the dangerous and defective nature of the Boat, despite having the opportunity and responsibility to do so."

The complaint seeks to hold Green and his fellow defendants jointly and severally liable for plaintiff's injuries. The complaint further alleges that Green "served as the alter ego of Defendant Bentley Marine Group," and therefore seeks to "pierce the corporate veil of Defendant Bentley Marine Group, LLC to reach the personal assets" of Green.

None of the defendants are residents of North Carolina. The complaint alleges that Green is a resident of South Carolina and that Bentley Marine Group "is or was a limited liability company organized under the laws of South Carolina." Plaintiff's complaint nevertheless alleges that Green "is subject to personal jurisdiction in the State of North Carolina pursuant to N.C. Gen. Stat. 1-75.4(4) (Local Injury; Foreign Act)." Plaintiff makes similar allegations as to the other defendants.

Green filed a motion to dismiss plaintiff's complaint against him for lack of personal jurisdiction, among other grounds. Green attached to his motion to dismiss an affidavit in which he provided, *inter alia*, that:

> 2. I am a citizen and resident of Charleston, South Carolina where I have resided almost all of my life.
>
> 3. I received a copy of the Complaint at my office in Summerville, South Carolina.
>
> 4. I have never been a resident of the State of North Carolina.
>
> 5. I have no ownership interest in any company located or doing business in North Carolina.
>
> 6. I do not have any family members that reside in North Carolina.
>
> 7. I have never personally derived revenue directly from goods used or consumed or services rendered in North Carolina.
>
> 8. I have never owned, used or possessed rights to any real or personal property located in North Carolina, nor do I maintain any banking or other financial accounts in North Carolina.
>
> 9. I am not licensed or registered to do business in North Carolina.
>
> 10. I have never had a personal office or address of any kind in North Carolina.
>
> 11. Prior to the filing of this matter, I have never been sued or made a general appearance in North Carolina.
>
> 12. I do not have a registered agent for service of process

in North Carolina.

With regard to his involvement with Bentley Marine Group, Green's affidavit further provided that "I have never commingled my funds or assets with those of Bentley Marine Group, LLC" and that "I have never personally co-owned any financial accounts or assets owned or controlled by Bentley Marine Group, LLC." Finally, Green maintained that "[w]ith respect to allegations [in the complaint], I was not involved in the day-to-day activities or management of Bentley Marine Group, LLC. The extent of my involvement with Bentley Marine Group, LLC was as a silent member for a very brief period of time in 2008."

Plaintiff responded by submitting an affidavit in which he stated that:

> 1) As this lawsuit reveals, I was injured badly while using [the] [B]oat in North Carolina.
>
> 2) My research of this type of "Bentley" boat shows that it was a brand that was sold all over the United States, including in North Carolina.
>
> 3) I have confirmed that to this day, boats of the type in question are available for sale in North Carolina.
>
> 4) My personal research also shows that injuries of the type that happened to me had happened to other people before it happened to me.
>
> 5) When I got on [the] [B]oat in North Carolina, I did not expect to suffer a terrible injury there that would force me to have to sue the boat owners. Unfortunately, that is what happened, and I want my day in court against whoever is determined to be legally responsible.

Green's motion to dismiss was heard before the Honorable Hugh B. Lewis at the 28 February 2018 session of the Mecklenburg County Superior Court. The trial court denied Green's motion to dismiss by order entered 20 March 2018. The trial court's order does not contain findings of fact. Defendant Green timely appealed.

On appeal, Green argues that it was error for the trial court to deny his motion to dismiss in that the record does not reveal the requisite level of contacts with North Carolina needed in order for North Carolina to exercise personal jurisdiction over him. We agree.

## Grounds for Appellate Review

Despite the trial court's order being interlocutory, Green nevertheless has a right of immediate appeal from the denial of his motion to dismiss in that it constitutes "an adverse ruling as to the jurisdiction of the court over the person." *Strategic Outsourcing, Inc. v. Stacks*, 176 N.C. App. 247, 249, 625 S.E.2d 800, 802 (2006) (quoting N.C. Gen. Stat. § 1-277(b)).

## Standard of Review

It is settled that "[t]he determination of whether jurisdiction is statutorily and constitutionally permissible due to contact with the forum is a question of fact." *Replacements, Ltd. v. MidweSterling*, 133 N.C. App. 139, 140, 515 S.E.2d 46, 48 (1999). "[U]pon a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of making out a *prima facie* case that jurisdiction exists."

*Bauer v. Douglas Aquatics, Inc.*, 207 N.C. App. 65, 68, 698 S.E.2d 757, 761 (2010). If the defendant "supplements [his] motion with affidavits or other supporting evidence, the allegations of the plaintiff's complaint can no longer be taken as true or controlling and plaintiff cannot rest on the allegations of the complaint[.]" *Wyatt v. Walt Disney World, Co.*, 151 N.C. App. 158, 163, 565 S.E.2d 705, 708 (2002) (citation and quotation marks omitted). Instead, the plaintiff "must respond by affidavit or otherwise setting forth specific facts showing that the court has jurisdiction." *Id.* (citation and quotation marks omitted).

In the instant case, the trial court's order does not contain findings of fact, nor did either party request the same. "In such a situation it is presumed that the trial court found facts sufficient to support [its] order," *State ex rel. Cooper v. Ridgeway Brands Mfg., LLC*, 188 N.C. App. 302, 306, 655 S.E.2d 446, 449 (2008), "and our role on appeal is to review the record for competent evidence to support these presumed findings." *Stetser v. TAP Pharm. Prods.*, 162 N.C. App. 518, 520, 591 S.E.2d 572, 574 (2004); *see also* N.C. Gen. Stat. § 1A-1, Rule 52(a)(2) (2017).

## Discussion

The analysis of "whether a non-resident defendant is subject to personal jurisdiction of North Carolina's courts" is two-pronged. *Robbins v. Ingham*, 179 N.C. App. 764, 768, 635 S.E.2d 610, 614 (2006), *appeal dismissed and disc. review denied*, 361 N.C. 221, 642 S.E.2d 448 (2007). "First, there must be a basis for jurisdiction

under the North Carolina long-arm statute, and second, jurisdiction over the defendant must comport with the constitutional standards of due process." *Id.*; N.C. Gen. Stat. § 1-75.4 (2017). Nevertheless, "our long-arm statute was intended to make available to North Carolina courts the full jurisdictional powers permissible under due process." *Robbins*, 179 N.C. App. at 770, 635 S.E.2d at 615 (citing *Dillon v. Numismatic Funding Corp.*, 291 N.C. 674, 676, 231 S.E.2d 629, 630 (1977)). Accordingly, because the "statutory authorization for personal jurisdiction is coextensive with federal due process, the critical inquiry in determining whether North Carolina may assert *in personam* jurisdiction over a defendant is whether the assertion comports with due process." *J.M. Thompson Co. v. Doral Mfg. Co.*, 72 N.C. App. 419, 424, 324 S.E.2d 909, 913 (1985).

As our Supreme Court has stated, in order for the exercise of personal jurisdiction over a non-resident defendant to comply with due process, "there must exist certain minimum contacts between the non-resident defendant and the forum such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Tom Togs, Inc., v. Ben Elias Indus. Corp.*, 318 N.C. 361, 365, 348 S.E.2d 782, 786 (1986). The minimum contacts test requires "some act by which the defendant purposefully avail[ed] himself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Id.* "Whether minimum contacts are present is determined by ascertaining what is fair

and reasonable under the circumstances, not by using a mechanical formula." *Robbins*, 179 N.C. App. at 770, 635 S.E.2d at 615.

In light of these standards, although the order does not contain findings of fact, we may nevertheless presume that the trial court found that North Carolina could appropriately exercise personal jurisdiction over Green (1) because the provisions of North Carolina's long-arm statute had been satisfied, and (2) because Green had the requisite minimum contacts with North Carolina to satisfy the demands of due process. Green's primary contention on appeal pertains to the latter finding: that "endorsing the exercise of personal jurisdiction" based on the record in this case "would eviscerate fundamental due-process protections." That is, as an out-of-state resident, Green maintains that he cannot "be hauled into court in North Carolina for a product-liability lawsuit against an out-of-state company simply because of his brief, passive investment in that company more than a decade ago."

In response, plaintiff first argues that Bentley Marine Group's involvement in the stream of commerce in North Carolina, through its sale of boats in this State, is sufficient to confer personal jurisdiction not only over Bentley Marine Group, but also Green. Plaintiff's argument on this point is misplaced.

To be sure, there will exist sufficient minimum contacts to permit a forum state to exercise personal jurisdiction over a corporation where that corporation has " 'deliver[ed] its products into the stream of commerce with the expectation that they

will be purchased by consumers in the forum State.'" *Tart v. Prescott's Pharm., Inc.*, 118 N.C. App. 516, 521-22, 456 S.E.2d 121, 126 (1995) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 298, 62 L. Ed. 2d 490, 502 (1980)). However, the fact that a court may properly exercise personal jurisdiction over a corporation under a "stream of commerce" analysis does not establish that a court may properly exercise personal jurisdiction over the corporation's individual shareholders. *Id.* Instead, the minimum contacts analysis must "focus[] on the actions of the non-resident defendant over whom jurisdiction is asserted, and not on the unilateral actions of some other entity." *Centura Bank v. Pee Dee Express, Inc.*, 119 N.C. App. 210, 213, 458 S.E.2d 15, 18 (1995).

If an individual shareholder "conducts business in North Carolina as principal agent for the corporation, then his corporate acts may be attributed to him for the purpose of determining whether the courts of this State may assert personal jurisdiction over him." *United Buying Grp., Inc. v. Coleman*, 296 N.C. 510, 515, 251 S.E.2d 610, 614 (1979). Absent sufficient individual contacts with the forum state, however, "personal jurisdiction over an individual officer or employee of a corporation may not be predicated merely upon the corporate contacts with the forum." *Robbins*, 179 N.C. App. at 771, 635 S.E.2d at 615. Nor may the requisite level of minimum contacts sufficient to confer personal jurisdiction be established based solely upon an individual's status as a shareholder. *See Saft Am., Inc. v. Plainview Batteries, Inc.*,

189 N.C. App. 579, 595, 659 S.E.2d 39, 50 (2008) (Arrowood, J., dissenting), *rev'd for the reasons stated in the dissent*, 363 N.C. 5, 673 S.E.2d 864 (2009); *see also J.M. Thompson Co.*, 72 N.C. App. at 427, 324 S.E.2d at 915 ("If, by merely acquiring . . . an economic interest in a foreign corporation, a person became responsible for every obligation incurred by that corporation, and subject to suit in whatever state the corporation happened to be located or incorporated, a negative impact on corporate investing and mergers would result. We find no justification in logic or law for discouraging investments in this fashion.").

Here, it is well established that Green's investment in Bentley Marine Group does not, on its own, constitute "some act by which" Green purposefully availed himself "of the privilege of conducting activities within [North Carolina], thus invoking the benefits and protections of [our] laws." *Carswell Distrib. Co. v. U.S.A.'s Wild Thing*, 122 N.C. App. 105, 107, 468 S.E.2d 566, 568 (1996). And while Bentley Marine Group would indeed be subject to personal jurisdiction under a stream of commerce analysis, the record is otherwise devoid of any act by Green that would subject him to the same.

For instance, the record does not suggest that after investing in Bentley Marine Group, Green personally participated in the marketing, sale, design, manufacture, or recall of its boats. Nor does plaintiff's affidavit contradict Green's assertions that he was "not involved in the day-to-day activities or management of

Bentley Marine Group," or that his involvement was limited to that of "a silent member for a very brief period of time in 2008." *E.g.*, *Rauch v. Urgent Care Pharm.*, 178 N.C. App. 510, 518, 632 S.E.2d 211, 217-18 (2006). Instead, the record reveals that Green has never been a North Carolina resident, nor has he ever owned real or personal property in North Carolina. *E.g.*, *id.* Quite plainly, plaintiff has proffered no evidence to suggest that Green's contacts with North Carolina consist of anything beyond mere investments in a company that manufactures boats which were or can be purchased here. *E.g.*, *Robbins*, 179 N.C. App. at 771, 635 S.E.2d at 615.

Nevertheless, plaintiff also argues that because Green "served as the alter-ego" of Bentley Marine Group, and because North Carolina has personal jurisdiction over Bentley Marine Group, Green is likewise subject to personal jurisdiction in North Carolina under a veil-piercing analysis. Plaintiff's arguments on this point are also misplaced.

"Piercing the corporate veil . . . allows a plaintiff to impose legal liability for a corporation's obligations, or for torts committed by the corporation, upon some other . . . individual that controls and dominates a corporation" to such an extent that the corporation exists as "a mere instrumentality or alter ego" of that individual. *Green v. Freeman*, 367 N.C. 136, 145, 749 S.E.2d 262, 270 (2013) (emphasis omitted). "The doctrine of piercing the corporate veil is not a theory of liability. Rather, it provides

an avenue to pursue legal claims against corporate officers or directors who would otherwise be shielded by the corporate form." *Id.* at 146, 749 S.E.2d at 271.

Plaintiff relies on veil piercing to assert personal jurisdiction over Green on the theory that "if the corporate form of a liable entity is disregarded, and an individual defendant is identified as the alter ego thereof, []he will be held liable for claims against the corporation." This assertion is indeed true. However, it does not necessarily follow that the individual defendant could be held liable *in a North Carolina court*. Plaintiff confuses veil piercing with personal jurisdiction. *Cf. Ridgeway Brands Mfg., LLC*, 188 N.C. App. at 306, 655 S.E.2d at 449 ("[P]laintiff cites no authority for its proposition that if an out-of-state corporation is the alter ego of a North Carolina corporation, then the courts of North Carolina have personal jurisdiction over the out-of-state corporation.").

By way of contrast, in *Tart v. Prescott's Pharmacies*—one of the primary cases upon which plaintiff relies—personal jurisdiction was properly exercised over the individual defendants because they had specifically orchestrated the advertising and sale in North Carolina of their principal corporation's weight-loss drugs that injured the plaintiff. 118 N.C. App. at 522, 456 S.E.2d at 126. In fact, the individual defendants were the "principal officers and directors" of the corporation and had been federally charged, in their individual capacities, for their fraudulent representations concerning the weight-loss drugs. *Id.* at 521, 518, 456 S.E.2d at 125, 123. It was

these specific contacts that conferred personal jurisdiction upon the defendants, not the status of the individual defendants as "alter egos" of the corporation.

In any event, in the instant case, plaintiff's complaint contains but one allegation to support Green's status as an alter ego:

> 21.     Upon information and belief, . . . [Defendant Green] served as the alter ego of Defendant Bentley Marine Group[.]

The record is devoid of any pertinent facts tending to establish Green's control over Bentley Marine Group beyond this single conclusory allegation. In response to Green's motion to dismiss and accompanying affidavit, the only additional evidence that plaintiff introduced was his own affidavit, which makes no mention of Green whatsoever. Accordingly, we conclude that the pleadings and affidavits fall short of constituting competent evidence that Green operated as the alter ego of Bentley Marine Group for purposes of establishing personal jurisdiction. *See Ridgeway Brands Mfg., LLC*, 188 N.C. App. at 306, 655 S.E.2d at 449 ("We hold that plaintiff's conclusory allegation in the Second Amended Complaint is insufficient to establish that Trevally is the alter ego of Ridgeway for purposes of determining whether the courts of North Carolina have jurisdiction over Trevally."). Thus, the trial court's order cannot be sustained on this ground.

## Conclusion

In sum, because the record reveals that Green's only contact with North Carolina was Green's status as an investor in a corporation that may be subject to personal jurisdiction in North Carolina, the evidence is insufficient to establish the level of minimum contacts that due process demands for the proper exercise of personal jurisdiction over an individual. Accordingly, the trial court's order denying Green's motion to dismiss for lack of personal jurisdiction must be reversed as a matter of law.

REVERSED.

Judges CALABRIA and TYSON concur.