An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-378

Filed 4 February 2026

Guilford County, No. 24CV011277-400

Angel Ray, et al., Plaintiffs,

v.

TITLEMAX OF VIRGINIA, INC.; TITLEMAX OF SOUTH CAROLINA, INC.; TMX FINANCE, INC.; TMX FINANCE OF VIRGINIA, INC.; CCFI COMPANIES, LLC., Defendants.

Appeal by Defendants from order entered 6 December 2024 by Judge R. Stuart Albright in Guilford County Superior Court. Heard in the Court of Appeals 14 October 2025.

> *Brown, Faucher, Peraldo & Benson, PLLC, by Drew Brown, for the Plaintiffs-Appellees.*

> *Morningstar Law Group, by Kenzie M. Rakes[1] and Shannon R. Joseph; and Venable LLP, by Abram I. Moore, Daniel J. Hayes, and Nelson M. Hua, Pro Hac Vice, for the Defendants-Appellants.*

WOOD, Judge.

---

[1] Motion to withdraw as counsel filed by Kenzie M. Rakes was allowed by this Court on 19 November 2025.

TitleMax of Virginia, Inc., TitleMax of South Carolina, Inc., TMX Finance of Virginia, Inc., TMX Finance, Inc., and CCFI Companies, LLC (collectively "Defendants") appeal from an order denying their motion to dismiss for lack of personal jurisdiction pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(2). On appeal, Defendants contend the trial court erred by finding it had personal jurisdiction over Defendants and by aggregating the contacts each defendant has with North Carolina in its minimum contacts analysis. After careful review of the record and applicable law, we affirm the trial court's denial of Defendants' motion to dismiss.

## I.    Factual and Procedural Background

Plaintiffs[2] are North Carolina residents who each entered into one or more consumer car title loans with one or more of the defendants: TitleMax of Virginia, Inc. ("TitleMax VA"), TitleMax of South Carolina, Inc. ("TitleMax SC"), TMX Finance of Virginia, Inc. ("TMX Finance VA"), TMX Finance, Inc. ("TMX Finance"), and CCFI Companies, LLC ("CCFI"). Defendants are foreign corporations organized and existing under the laws of a state other than North Carolina, and are in the business of consumer car title loans. TitleMax VA and TitleMax SC are customer facing entities while it is alleged TMX Finance, TMX Finance VA, and CCFI are corporate affiliates that exercise management and control over TitleMax VA and TitleMax SC.

---

[2] This case was originally brought by sixty-three plaintiffs.

This is the thirteenth mass action brought against TitleMax affiliated entities in Guilford County; the first twelve involved approximately 1,320 plaintiffs. The defendants in each prior action filed similar motions to dismiss for lack of personal jurisdiction after removing the cases to federal court. The motions to dismiss for lack of personal jurisdiction have all been similarly denied by the federal courts.

On 14 May 2024, Plaintiffs filed a complaint against Defendants bringing six claims for relief: (1) violations of the North Carolina Consumer Finance Act (the "Act"), N.C. Gen. Stat. § 53-190(a); (2) in the alternative of the claim for violations under the Act, violations of N.C. Gen. Stat. § 24-1.1 et seq.; (3) violations of N.C. Gen. Stat. § 75-1.1; (4) punitive damages; (5) piercing the corporate veil; and (6) a motion to compel arbitration. Plaintiffs assert Defendants charged each of them an annual interest rate that exceeded the maximum amount allowed by the Act on the consumer car title loans sold to them. The Act states:

> No loan contract made outside this State in the amount or of the value of twenty-five thousand dollars ($25,000) or less, for which greater consideration or charges than are authorized by G.S. 53-173 and G.S. 53-176 have been charged, contracted for, or received, *shall be enforced in this State.* This subsection, however, does not apply to loan contracts in which all contractual activities, including solicitation, discussion, negotiation, offer, acceptance, signing of documents, and delivery and receipt of funds, occur entirely outside this State.

N.C. Gen. Stat. § 53-190(a) (2023) (emphasis added).

Plaintiffs allege in their complaint they are entitled to pierce the corporate veil as "TMX Finance, LLC, CCFI Companies, LLC and/or some other owner and/or entity exercise complete domination and control over the other entity defendants." Additionally, Plaintiffs alleged "TMX Finance, LLC, CCFI Companies, LLC and/or some other owner and/or entity used the other Defendant entities as mere instrumentalities, and Plaintiffs are entitled to cover all damages alleged in this action from each of the defendant entities jointly and severally."

On 2 August 2024, Defendants filed a motion to dismiss pursuant to Rule 12(b)(2) claiming there is a lack of personal jurisdiction or, alternatively, to allow for reasonable jurisdictional discovery for "at least" the following reasons:

> 1. North Carolina's Long-Arm Statute does not authorize personal jurisdiction over Defendants in the present case.
>
> 2. The Court lacks general personal jurisdiction over Defendants because Defendants do not have continuous and systematic contacts with North Carolina.
>
> 3. The Court lacks specific personal jurisdiction because Defendants' alleged contacts with North Carolina are false and/or insufficient as a matter of law.

Defendants attached to the motion to dismiss a declaration from Christopher S. Dunn ("Dunn"), an employee of CCFI, which included "facts regarding personal jurisdiction." Dunn claimed in his declaration that CCFI was not affiliated with TitleMax VA, TitleMax SC, TMX Finance, and TMX Finance VA (collectively the "TitleMax entities") "until Q4 2023 and, prior to that, CCFI Companies, LLC was not

affiliated nor did any business with the TitleMax entities." Further, Dunn claims that CCFI "is only affiliated with the TitleMax entities through an indirect mutual parent company" and neither CCFI nor TMX Finance "engage in the business of lending to customers."

On 20 November 2024, Plaintiffs filed an affidavit from Jessica Crowley ("Crowley"), a declaration from Darren Medley ("Medley"), and a deposition from Taylor Pack ("Pack"). Crowley and Pack are former employees of TitleMax SC and Medley is a former employee of TitleMax VA. The affidavit, declaration, and deposition all tended to show Defendants' employees were making a deliberate reach into North Carolina to sell more consumer car title loans.

On 21 November 2024, Plaintiffs filed sixty-two loan agreements with a corresponding affidavit or declaration as exhibits. The affidavit and loan agreement filed for Angel Ray ("Ray"), the lead plaintiff in the case *sub judice*, tends to show she was charged an annual percentage rate of 215.24% on a total amount financed of $1,171.50, resulting in a total finance charge of $6,463.06. Ray stated she obtained her first car title loan after learning about TitleMax from a referral in North Carolina and was instructed by a TitleMax employee to bring her North Carolina driver license, North Carolina car title, and car to a TitleMax office located in Virginia. TitleMax put a lien on Ray's car title with the North Carolina Division of Motor Vehicles ("North Carolina DMV"). Further, Ray stated she made her loan payments to TitleMax by calling in from North Carolina via telephone and providing her debit

card information.  TitleMax then proceeded to send mailers to Ray encouraging her to come back for another loan, which she eventually did at a South Carolina location. When Ray, along with many other plaintiffs, eventually were unable to make their loan payments, TitleMax entered North Carolina and repossessed their vehicles.

On 4 December 2024, the motion to dismiss hearing was held, at which Defendants were represented jointly by counsel; both local and pro hac vice counsel introduced themselves as appearing for "the defendants," not an individual defendant.  On 6 December 2024, the trial court entered its order denying Defendants' motion to dismiss for lack of personal jurisdiction and the alternative, motion to conduct jurisdictional discovery.  On 9 December 2024, the trial court granted Plaintiffs' motion to compel arbitration.  On 6 January 2025, Defendants filed notice of appeal of the trial court's denial of their motion to dismiss.

## II.  Analysis

Defendants argue the trial court erred by denying their motion to dismiss pursuant to Rule 12(b)(2) for lack of personal jurisdiction and their alternative motion for reasonable jurisdictional discovery.  Specifically, Defendants argue (1) there was no competent evidence presented to support personal jurisdiction over TMX Finance, TMX Finance VA, or CCFI; (2) the trial court improperly aggregated the contacts of all Defendants, causing its findings of fact to be "plainly unconstitutional"; and (3) the trial court relied on categories of activity for all Defendants that "cannot constitute purposeful availment as a matter of law."  In contrast, Plaintiffs argue the

trial court did not err and the record contains competent evidence to support a finding

of sufficient minimum contacts to exercise personal jurisdiction over all Defendants.

We agree.

## A. Standard of Review

"The standard of review to be applied by a trial court in deciding a motion

under Rule 12(b)(2) depends upon the procedural context confronting the court." *Banc*

*of Am. Secs. LLC v. Evergreen Int'l Aviation, Inc.*, 169 N.C. App. 690, 693, 611 S.E.2d

179, 182 (2005). Parties generally present personal jurisdiction issues in,

> one of three procedural postures: (1) the defendant makes
> a motion to dismiss without submitting any opposing
> evidence; (2) the defendant supports its motion to dismiss
> with affidavits, but the plaintiff does not file any opposing
> evidence; or (3) both the defendant and the plaintiff submit
> affidavits addressing the personal jurisdiction issues.

*Id.* Here, as Defendants and Plaintiffs have submitted evidence addressing personal

jurisdiction and the order denying the motion to dismiss states the trial court

considered the pleadings and arguments of the parties, the case fits into the third

category of procedural postures.

> If the parties submit dueling affidavits the court may hear
> the matter on affidavits presented by the respective
> parties, or the court may direct that the matter be heard
> wholly or partly on oral testimony or depositions.

> If the court chooses to decide the motion based on
> affidavits, the trial judge must determine weight and
> sufficiency of the evidence presented in the affidavits much
> as a juror.

> When this Court reviews a decision as to personal jurisdiction, it considers only whether the findings of fact by the trial court are supported by competent evidence in the record; if so, this Court must affirm the order of the trial court.
>
> . . . .
>
> If the trial court's findings of fact are supported by competent evidence in the record, then we must affirm the trial court's order, no matter how we might view the evidence.

*Hundley v. AutoMoney, Inc.*, 284 N.C. App. 378, 382-83, 876 S.E.2d 765, 770 (2022)

(cleaned up).

> Appellate courts consider the same evidence as the trial court when determining whether competent evidence exists to support the exercise of personal jurisdiction which includes: (1) any allegations in the complaint that are not controverted by the defendants' affidavits; (2) all facts in the affidavits; and (3) any other evidence properly tendered.

*Button v. Level Four Orthotics & Prosthetics, Inc.*, 380 N.C. 459, 469, 869 S.E.2d 257, 266 (2022). This Court reviews whether the trial court's conclusions of law are supported by the findings of fact *de novo*. *Cohen v. Cont'l Motors, Inc.*, 279 N.C. App. 123, 134, 864 S.E.2d 816, 823 (2021).

**B. Personal Jurisdiction**

A personal jurisdiction analysis involves two steps; first, the court must determine whether North Carolina's long-arm statute requirements have been met under N.C. Gen. Stat. § 1-75.4, and then if those requirements are met, it must

determine whether exercising personal jurisdiction comports with due process. *Hundley*, 284 N.C. App. at 383, 876 S.E.2d at 771. Our Supreme Court has held the provisions of N.C. Gen. Stat. § 1-75.4 are "intended to make available to the North Carolina courts the full jurisdictional powers permissible under federal due process." *Button*, 380 N.C. at 470, 869 S.E.2d at 267 (quoting *Beem USA Ltd.-Liab. Ltd. P'ship v. Grax Consulting LLC*, 373 N.C. 297, 302, 838 S.E.2d 158, 161 (2020)). Further, "the Due Process Clause permits state courts to exercise personal jurisdiction over an out-of-state defendant so long as the defendant has certain minimum contacts with the forum state such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Button*, 380 N.C. at 470, 869 S.E.2d at 267 (quoting *Beem*, 373 N.C. at 302, 838 S.E.2d at 162).

There are two types of personal jurisdiction, general and specific jurisdiction. *Leake v. AutoMoney, Inc.*, 284 N.C. App. 389, 398, 877 S.E.2d 22, 31 (2022). Specific jurisdiction, which the trial court found in the case *sub judice*, "exists when 'the controversy arises out of the defendant's contacts with the forum state.'" *Id.* (quoting *Tom Togs, Inc. v. Ben Elias Indus. Corp.*, 318 N.C. 361, 366, 348 S.E.2d 782, 786 (1986)). This Court has established several factors to consider when performing a specific jurisdiction analysis to determine whether sufficient minimum contacts exits: "(1) the quantity of the contacts; (2) the nature and quality of the contacts; (3) the source and connection of the cause of action with those contacts; (4) the interest of the forum state; and (5) the convenience to the parties." *Leake*, 284 N.C. App. at 399,

877 S.E.2d at 32 (quoting *A.R. Haire, Inc. v. St. Denis*, 176 N.C. App. 255, 260, 625 S.E.2d 894, 899 (2006)).  "While a contractual relationship between an out-of-state defendant and a North Carolina resident is not dispositive of whether minimum contacts exists, 'a single contract may be a sufficient basis for the exercise of specific personal jurisdiction if it has a substantial connection with this State,'" *Button*, 380 N.C. at 470, 869 S.E.2d at 267 (quoting *Tom Togs*, 318 N.C. at 367, 348 S.E.2d at 786).

First, we address Defendants' argument covering all five defendants, that the trial court erred by referring to Defendants collectively in its order and by not conducting separate personal jurisdiction analyses for each defendant.  Next, we address Defendants' arguments regarding specific defendants.

### 1. Reference to Defendants Collectively

In its order, the trial court refers to Defendants collectively as "Defendants" or "TitleMax."  Defendants argue this is error because by referring to Defendants collectively throughout the order the trial court "attributed each and every alleged North Carolina contact to all Defendants."  Defendants cite *Rush v. Savcheuk*, 444 U.S. 320, 332 (1980) to support their argument that separate analyses into the minimum contacts for each defendant is a requirement of due process.  While Defendants are correct in that "each defendant's contacts with the forum state must be analyzed individually," the trial court was not required to "make specific *findings of fact* in support of its order unless requested by a party." *Button*, 380 N.C. at 470,

869 S.E.2d at 267; *Toshiba Glob. Com. Sols., Inc. v. Smart & Final Stores LLC*, 381 N.C. 692, 694, 873 S.E.2d 542, 546 (2022) (emphasis added). The record does not indicate that either party requested the trial court make specific findings of fact.

"Where no findings are made, proper findings are presumed, and our role on appeal is to review the record for competent evidence to support these presumed findings." *Button*, 380 N.C. at 469, 869 S.E.2d at 266 (quoting *Bruggeman v. Meditrust Acquisition Co.*, 138 N.C. App. 612, 615, 532 S.E.2d 215, 217-18 (2000)). Findings of fact made by the trial court coupled with presumed findings of fact may be used together on appeal to support a finding of personal jurisdiction, additionally, when "presumed findings of fact are supported by competent evidence, they are conclusive on appeal despite evidence to the contrary." *Button*, 380 N.C. at 469, 869 S.E.2d at 266 (quoting *Tejal Vyas, LLC v. Carriage Park, Ltd. P'ship*, 166 N.C. App. 34, 37, 600 S.E.2d 881, 884 (2004)).

As the record does not indicate either party requested the trial court make specific findings of fact, the trial court's reference to Defendants collectively in its order is not *per se* error as long as there is competent evidence in the record to support the appropriate findings of fact and presumed findings for each defendant separately. We also note that while Defendants now raise arguments about being referenced in the collective, Defendants have acted as a collective unit throughout this litigation by submitting briefs together, being represented by counsel together, submitting a single declaration by Dunn asserting facts regarding all Defendants, and filing their motion

to dismiss and other documents referring to themselves collectively as "Defendants" or "TitleMax entities" in some variation.

## 2. *Evidence of Minimum Contacts*

Defendants argue there are insufficient minimum contacts to support the exercise of personal jurisdiction over all Defendants and take issue with all findings made, stating the trial court improperly relied on multiple categories of alleged activity that cannot be considered purposeful availment as a matter of law. We disagree. The trial court found Defendants to have a substantial connection with North Carolina through the following conduct:

> a. Making loans to North Carolina residents.
>
> b. Running television and radio advertisements that can be seen or heard in North Carolina.
>
> c. Sending marketing mailers into North Carolina.
>
> d. Paying referral fees to North Carolina residents to refer North Carolina residents.
>
> e. Discussing potential loans with North Carolina residents located in North Carolina.
>
> f. Soliciting North Carolina residents for title loans.
>
> g. Using the North Carolina DMV to record liens.
>
> h. Accepting payments in or sent from North Carolina.
>
> i. Arranging for repossessions in North Carolina.
>
> j. [R]epossessing vehicles in North Carolina. **(R 894).**

After a careful review of the record, we conclude competent evidence exists to support

these findings of fact. Specifically, statements made in the affidavit from a former employee, statements made in affidavits and declarations by Plaintiffs, North Carolina DMV records, and loan agreements submitted by Plaintiffs support the findings of fact made by the trial court.

In a nearly identical case, *Leake v. AutoMoney, Inc.*, this Court identified nearly identical conduct by the defendant, a competing consumer car title lender, and held, "the sum and quality of Defendant's contacts with this State, paired with Defendant's obvious intent to recruit North Carolina clients, is sufficient to establish personal jurisdiction." 284 N.C. App. at 401, 877 S.E.2d at 33. The conduct included:

> 1) online advertisements; 2) advertisements in Steals & Deals, a local North Carolina publication; 3) telephone calls between Defendant and North Carolina residents while the residents were in North Carolina; 4) perfection of its security interest with North Carolina [DMV]; 5) offers of referral bonuses to North Carolina residents for referring new North Carolina customers; 6) receipt of loan payments from North Carolina residents within North Carolina; and 7) repossession of vehicles located within North Carolina.

*Id.* at 399, 877 S.E.2d at 32. Defendants argue the *AutoMoney* cases are distinguishable from the current case because online and local advertisements were presented as competent evidence to support personal jurisdiction. However, in the case *sub judice*, Plaintiffs who received their loans from TitleMax VA and TitleMax SC reported in their affidavit or declaration that they heard about TitleMax for the first time from either a television or radio ad while they were physically in North Carolina. Further, Plaintiffs reported receiving mailers encouraging them to come

back for additional loans after receiving their first loan from TitleMax VA and TitleMax SC. One plaintiff who received their loan from a TitleMax VA location and one plaintiff who received their loan from a TitleMax SC location each reported to be offered a referral bonus of $50.00 for encouraging another *North Carolina resident* to get a loan from TitleMax. Additionally, the evidence clearly shows TitleMax VA and TitleMax SC on numerous occasions entered into car title loans with North Carolina residents, entered North Carolina to file liens on vehicles using the North Carolina DMV for every plaintiff, and entered North Carolina to repossess vehicles of North Carolina residents. Thus, the record contains competent evidence tending to show TitleMax VA and TitleMax SC engaged in nearly identical conduct with North Carolina residents as the defendant did in *Leake v. AutoMoney*.

While Dunn attempts to contradict the allegations that TitleMax entities intentionally reach into North Carolina for customers by stating their policies are against it, the evidence tends to show that the actual practices implemented by TitleMax VA and TitleMax SC encourage intentional reach into North Carolina. We conclude TitleMax VA and TitleMax SC had direct and substantial conduct through its business operations and purposefully availed themselves to the privileges of conducting activities within North Carolina. *See id.* at 401, 877 S.E.2d at 33.

Likewise, as discussed further below, we conclude the record contains sufficient competent evidence to support the findings necessary to establish that TMX Finance, TMX Finance VA, and CCFI exercised sufficient control and management

over TitleMax VA and TitleMax SC to have purposefully availed themselves of the privileges of conducting activities within North Carolina.

### 3. *Purposeful Availment by Corporate Affiliates*

Defendants argue Plaintiffs did not provide the trial court with competent evidence of any contact between TMX Finance, TMX Finance VA, and CCFI entities and North Carolina, "let alone contact that could amount to purposeful availment for jurisdictional purposes." In support of this notion, Defendants state, "it is not enough that corporations related to a defendant may have contacts with the forum" state.

"When a corporation purposefully avails itself of conducting activities in this State, it is not unreasonable to subject it to suit here." *Tart v. Prescott's Pharmacies, Inc.*, 118 N.C. App. 516, 522, 456 S.E.2d 121, 126 (1995). "[T]he minimum contacts analysis must 'focus on the actions of the non-resident defendant over whom jurisdiction is asserted, and not on the unilateral actions of some other entity.'" *Padron v. Bentley Marine Grp., LLC*, 262 N.C. App. 610, 616, 822 S.E.2d 494, 499 (2018) (quoting *Centura Bank v. Pee Dee Express, Inc.*, 119 N.C. App. 210, 213, 450 S.E.2d 15, 18 (1995)). "It is [] well established that the exercise of personal jurisdiction over an alter ego corporation does not offend due process." *Southern New England Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123, 138 (2d Cir. 2010).

> "Piercing the corporate veil allows a plaintiff to impose legal liability for a corporation's obligations, or for torts committed by the corporation, upon some other individual that controls and dominates a corporation" to such an extent that the corporation exists as "a mere

instrumentality or alter ego" of that individual.

*Padron*, 262 N.C. App. at 617, 822 S.E.2d at 500 (cleaned up) (quoting *Green v. Freeman*, 367 N.C. 136, 145, 749 S.E.2d 262, 270 (2013)).

It is not the status of an "alter ego" that confers personal jurisdiction over a defendant, it is the specific contacts that confer personal jurisdiction. *See Padron*, 262 N.C. App. at 617, 822 S.E.2d at 500. In *Padron v. Bentley Marine Group*, the plaintiff made a single conclusory allegation stating "[u]pon information and belief, Defendant Green served as the alter ego of Defendant Bentley Marine Group." *Id.* at 618, 822 S.E.2d at 500. This Court held that this single allegation left the "record [] devoid of any pertinent facts tending to establish Green's control over Bentley Marine Group beyond this single conclusory allegation." *Id.* In contrast to *Padron*, Plaintiffs *sub judice,* have made numerous allegations which tend to show the control TMX Finance, TMX Finance VA, and CCFI have over TitleMax VA and TitleMax SC.

Plaintiffs do not argue that TMX Finance, TMX Finance VA, and CCFI had direct contact with individual Plaintiffs to support personal jurisdiction. Rather, Plaintiffs assert these Defendants have purposely availed themselves and have sufficient minimum contacts with North Carolina through their control of TitleMax VA and TitleMax SC. As evidence of this control, Plaintiffs have provided an affidavit from a former TitleMax SC employee and decisions from other cases that were removed to federal court against the same defendants, excluding CCFI, in addition to other TitleMax entities where it was found the defendants purposefully availed

themselves to North Carolina. Further, Plaintiffs have asserted a claim seeking to pierce the corporate veil. Plaintiffs made the following allegations in their complaint to support that TMX Finance, TMX Finance VA, and CCFI have control over TitleMax VA and TitleMax SC:

> 44. TMX Finance, LLC, CCFI Companies, LLC and/or some other owner and/or entity exercise complete dominion and control over the other entity defendants.
>
> 45. TMX Finance, LLC, CCFI Companies, LLC and/or some other owner and/or entity totally control the finances, policy and business practice so that the corporate entities had no mind, will or existence of their own.
>
> 46. For example, TMX Finance, LLC, CCFI Companies, LLC and/or some other owner and/or entity directs, and even pays, employees of the other shell Defendants.
>
> 47. Defendants have excessively fragmented their title loan business into numerous entities. For example, all of the defendant entities do business as "TitleMax."
>
> 48. The finances of the defendants are commingled.
>
> 49. TitleMax's corporate representative Christopher Dunn has repeatedly testified that the decisions are made by the holding companies.
>
> 50. Further, when TitleMax pays awards that have been entered against it, the payments arrive from CCFI Companies, LLC which is further evidence of comingling of corporate operations.
>
> 51. The corporate representative who has appeared for TitleMax at dozens of arbitrations works for CCFI Companies, LLC including having a CCFI email address.
>
> 52. Further, to deal with these cases CCFI has even created

an email address using the undersigned firm's name: GLCArbitrations@CCFl.com. There is no question that CCFI Companies, LLC is acting here on behalf of TitleMax as its parent company in total control of its operations.

53. Plaintiffs each have their own separate loan transactions with one or more of the defendants, and each are entitled to their own separate payment.

54. TMX Finance, CCFI Companies, LLC and/or some other owner and/or entity exercised their dominion and control over the other Defendants.

55. When a legal entity is used to defeat public convenience, justify wrong, protect fraud, or defend crime, the law should disregard the corporate formation.

56. Based upon the foregoing, TMX Finance, LLC, CCFI Companies, LLC and/or some other owner and/or entity used the other Defendant entities as mere instrumentalities, and Plaintiffs are entitled to cover all damages alleged in this action from each of the defendant entities jointly and severally.

Defendants do not argue Plaintiffs have failed to state a sufficient claim to pierce the corporate veil. Additionally, Plaintiffs presented evidence to the trial court tending to show that TitleMax "corporate" entities controlled the employees at the local branch locations and solicited business directly to customers. Specifically, an affidavit of a former employee of TitleMax SC alleged: (1) "corporate" sent out mailings to potential customers several times a year; (2) "corporate" at one point changed the policy allowing solicitation of customers from anywhere in North Carolina; (3) "corporate" changed late payment policies; (4) "corporate" reviewed copies of the loan agreements and would approve when vehicles would be taken from

customers for nonpayment; and (5) wages were deposited into employees' bank accounts by TMX Finance. Also submitted to the trial court as evidence during the personal jurisdiction hearing were transcripts of evidentiary hearings and opinions from some of the nearly identical "TitleMax" cases that were removed to federal court. Notably, Judge Schroeder's memorandum opinion and order from the Middle District of North Carolina referred to all defendants, including TitleMax VA, TitleMax SC, TMX Finance, and TMX Finance VA, collectively and determined personal jurisdiction existed.

Based on the allegations and evidence discussed *supra* we conclude sufficient evidence exists to support findings to demonstrate that TMX Finance, TMX Finance VA, and CCFI are corporate affiliate entities that exercise control over the actions of TitleMax VA and TitleMax SC, and through their direction and control of TitleMax VA and TitleMax SC employees, policies, and procedures have purposefully availed themselves of the privileges of conducting activities within North Carolina.

## III. Conclusion

For the foregoing reasons, we hold Defendants are subject to personal jurisdiction in North Carolina and affirm the trial court's order.

AFFIRMED.

Judges STROUD and MURRY concur.

Report per Rule 30(e).